IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DANIEL ROMANOWSKI,     }
            }
Plaintiff,         }
            }
v.           } CIVIL ACTION NO. 2:25-cv-286
            }
CITY OF NEW CASTLE,     }
            }
            }
OFFICER JAMES HEANEY    }
(personally and in his official capacity), }
            }
            }
OFFICER NATHANIEL MILLER  }
(personally and in his official capacity), }
            }

Lt. Kevin Seelbaugh
(personally and in his official capacity),

Chief David Cumo
(personally and in his official capacity),

Christopher Frye Jr.
(personally and in his official capacity),

Defendants.

**ORIGINAL VERIFIED COMPLAINT**

## I.    Introduction

This is a civil rights action brought by Plaintiff, Daniel Romanowski, a U.S. citizen residing in Lawrence County, Pennsylvania, against City of New Castle , Officer Nathaniel Miller, Officer Heaney, and Lt. Seelbaugh, Chief David Cumo, City Manager Christopher Frye Jr., for violations of his constitutional rights. At all times relevant to this action, Officers Miller, Heaney, and Lt. Seelbaugh were employed by and acting in accordance with the customs, policies, and/or practices of the City of New Castle Police Department and the City of New Castle.

Acting under color of state law, Officer Miller, Officer Heaney, and Lt. Seelbaugh engaged in retaliatory, intimidating, and unlawful conduct toward Plaintiff, violating his Fourth and First Amendment rights under the U.S. Constitution, as well as Pennsylvania state laws. Officer Miller unlawfully detained and threatened Plaintiff, Officer Heaney failed to take appropriate action in response to Plaintiff's reports of criminal activity, and Lt. Seelbaugh retaliated against Plaintiff by bringing false charges after Plaintiff provided a draft of this complaint to Chief Cumo and the New Castle City Council.

Plaintiff asserts that Defendants' actions reflect a pattern and practice of misconduct, abuse of power, and deliberate indifference to the constitutional rights of citizens. The City of New Castle and its Police Department have failed to implement appropriate training, supervision, and accountability measures, fostering an environment where officers feel emboldened to violate citizens' rights without consequence.

Plaintiff contends that Officer Heaney's conduct, including unauthorized searches, excessive threats of force, and intimidation, was done willfully and with deliberate intent to abuse his authority. Plaintiff further alleges that Officer Heaney's actions were enabled by the City of New Castle and its Police Department, which fostered an environment of deliberate indifference to the rights of citizens by failing to implement appropriate training, supervision, and accountability measures for its officers.

Plaintiff contends that Officer Miller's conduct, including attempted intimidation, was done willfully and with deliberate intent to abuse his authority. Plaintiff further alleges that Officer Miller's actions were enabled by the City of New Castle and its Police Department, which fostered an environment of deliberate indifference to the rights of citizens by failing to implement appropriate training, supervision, and accountability measures for its officers.

Plaintiff contends that Lt. Seelbaugh's retaliatory actions, including the initiation of false charges against Plaintiff in response to his efforts to seek legal recourse, were carried out willfully and with the intent to intimidate and punish Plaintiff for exercising his constitutional rights. Plaintiff further alleges that the City of New Castle and its Police Department knowingly allowed such retaliatory behavior to occur by failing to establish policies preventing misuse of authority against citizens who file complaints, reinforcing a culture of unchecked misconduct within the department.

Plaintiff further asserts that Defendant Chief Cumo, as the Chief of Police for the New Castle Police Department, has exhibited a pattern and practice of tolerating and enabling unconstitutional misconduct by his officers. Despite having the authority and responsibility to oversee departmental policies, training, and disciplinary measures, Cumo has consistently failed to enforce constitutional standards or to ensure that officers under his command adhere to their legal obligations. His deliberate inaction has reinforced a culture of impunity within the department, where officers are encouraged, either explicitly or implicitly, to engage in misconduct without fear of discipline or accountability. This systemic failure has directly contributed to the violations suffered by Plaintiff and others within the community, as officers, emboldened by the lack of oversight, continue to act outside the bounds of the law.

Plaintiff additionally asserts that the City of New Castle Police Department has a longstanding pattern and practice of tolerating complacency and negligence by its officers, who routinely fail to carry out their duties and uphold the laws they have sworn to enforce. This culture of inaction is widely known within the community and implicitly encouraged within the department, allowing officers to disregard their obligations to the public with impunity. As a result, residents, including known criminals, are aware that the police will often fail to intervene or take action, even when witnessing crimes. This perception within the community has contributed to an escalation in crime, as offenders feel emboldened by the lack of enforcement and accountability. Defendants' failure to act in response to known constitutional violations has created an environment where officers are not only permitted but encouraged to disregard the rights of the citizens they serve, perpetuating a cycle of misconduct and abuse of authority.

Plaintiff's own public search on Officer Miller's record revealed that, rather than being reprimanded for his actions, Officer Miller was in fact promoted within the department. This promotion, despite the complaints and his pattern of unlawful behavior, suggests a broader departmental culture of rewarding or ignoring misconduct rather than holding officers accountable. This environment emboldens officers like Miller to continue infringing upon citizens' rights without fear of repercussion, reinforcing a pattern of retaliatory and intimidating behavior toward those who exercise their rights to seek justice.

The City of New Castle's tolerance of unconstitutional conduct is further demonstrated by Beckworth v. City of New Castle, et al., Case No. 2:23-cv-02043 (W.D. Pa. 2023), where Officer Nathaniel Miller, a named Defendant in this action, was also a defendant in that case. Beckworth alleged civil rights violations, including excessive force, unlawful detention, and abuse of authority, further evidencing a pattern of misconduct by Miller and the City's failure to supervise or discipline him. Notably, Beckworth's complaint also involves allegations of wrongful death against an officer, illustrating the extreme nature of the constitutional violations that occur within the City of New Castle's police force. The City's failure to remove or discipline officers with repeated civil rights complaints directly contributed to the injuries suffered by Plaintiff, as it reinforced a departmental culture where officers knew they could violate the law with impunity.

Plaintiff contends that the failure of the City of New Castle to address prior allegations against its officers, including those raised in Beckworth and other federal cases, demonstrates an institutionalized policy of indifference to constitutional violations. This failure has led to an environment in which officers, including Defendants named in this case, believe they can act outside the bounds of the law without consequence. The systemic nature of these violations necessitates judicial intervention to prevent further harm and ensure accountability.

Despite receiving multiple complaints from Plaintiff regarding Officer Miller's abusive actions, the City of New Castle Police Department allegedly conducted an internal review but took no meaningful disciplinary action, if any at all, allowing Officer Miller to remain on active duty and continue violating the rights of citizens without consequence.

Plaintiff further contends that it is an established fact that both the City and its Police Department have engaged in deliberate efforts to withhold critical information from the public regarding police misconduct and abuse of authority. Officers who engage in excessive force, unlawful searches, and retaliatory actions are routinely protected by their superiors, with complaints either ignored or intentionally buried to avoid public scrutiny. As a result, the pattern of corruption within the department continues unchallenged, further emboldening officers to violate the constitutional rights of citizens without fear of repercussion.

The City of New Castle's systemic efforts to cover up police misconduct are evidenced by its refusal to implement transparent oversight measures, its resistance to producing public records related to officer discipline, and its ongoing retaliation against individuals who bring attention to civil rights violations. This calculated suppression of information not only enables continued abuses but actively obstructs justice, denying victims any meaningful recourse.

This culture of concealment was further demonstrated when Plaintiff filed a Right to Know request seeking the disciplinary file for Officer Nathaniel Miller. In response, the city refused to release the record, claiming it was "confidential." Chief Cumo personally issued a blanket statement asserting that "no documented investigation and/or disciplinary action is available" regarding Officer Miller. Furthermore, Cumo falsely claimed, "There are no previous citizen complaints or disciplinary actions taken against Cpl. Miller documented in his personnel file." However, this is a blatant attempt to conceal misconduct and further the corrupt practices within the department, as it is indisputable that the Beckworth v. City of New Castle (2023) case—where Miller was named as a defendant—constitutes a formal complaint against him. Yet, the city and its officials continue to lie and claim no records exist to shield Miller from accountability.

Plaintiff asserts that the culture of secrecy and protection within the New Castle Police Department has directly contributed to the violations he suffered, as the officers involved knew that their actions would be shielded by their superiors. This institutionalized corruption necessitates immediate judicial intervention to prevent further harm and to hold Defendants accountable for their ongoing violations of constitutional rights.

Plaintiff brings this action under 42 U.S.C. § 1983, seeking compensatory and punitive damages, injunctive and declaratory relief, and attorney's fees. Through this action, Plaintiff aims to hold Defendants accountable for their actions, to protect his rights, and to ensure that the City of New Castle and its Police Department implement the necessary reforms to prevent similar abuses in the future.

## II.     Jurisdiction and Venue

This Court has jurisdiction over this action under 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as this case arises under the laws of the United States, specifically 42 U.S.C. § 1983.

Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to this complaint occurred in this District.

## III.    Parties

1.    **Plaintiff:**

Daniel Romanowski is a citizen of the United States and resides in Lawrence County, Pennsylvania.

2.    **Defendant City of New Castle**

City of New Castle is a municipality in the Commonwealth of Pennsylvania and, at all relevant times, was responsible for the employment of the officers and officials named as defendants in this action, including the City Manager. As their employer, the city is legally responsible for their actions committed within the scope of their employment and under color of law.

3.    **Defendant Officer Nathaniel Miller:**
Nathaniel Miller is, and at all times relevant to this complaint was, a police officer employed by the City of New Castle Police Department, acting under color of state law in both his personal and official capacities. Defendant Miller was, at all times herein mentioned, acting in accordance with the customs, policies, and/or practices of the City of New Castle Police Department. As a law enforcement officer, he had a legal obligation to perform his duties in conformity with the U.S. Constitution, federal law, and applicable Pennsylvania state laws. His actions, as described in this complaint, reflect a repeated disregard for these legal standards, resulting in the violation of Plaintiff's rights. At all times relevant hereto, Defendant Miller was acting within the scope of his employment as such. He is being sued both in his individual and official capacity.

4.   **Defendant Officer James Heaney:**
Officer Heaney is, and at all times relevant to this complaint was, a police officer employed by the City of New Castle Police Department, acting under color of state law in both his personal and official capacities. Defendant Heaney had a duty to respond to reports of criminal activity, investigate lawfully, and take appropriate enforcement action. Instead, he

failed to act in response to Plaintiff's reports of theft and criminal behavior, thereby depriving Plaintiff of his right to police protection. Defendant Heaney's failure to act was in direct violation of his legal responsibilities as a law enforcement officer. At all times relevant hereto, Defendant Heaney was acting within the scope of his employment as such. He is being sued both in his individual and official capacity.

5. **Defendant Lieutenant Kevin Seelbaugh:**

Lt. Seelbaugh is, and at all times relevant to this complaint was, a ranking officer employed by the City of New Castle Police Department, acting under color of state law in both his personal and official capacities. Defendant Seelbaugh engaged in retaliatory conduct against Plaintiff, including initiating false charges, in response to Plaintiff exercising his First Amendment right to file complaints and seek legal recourse. Defendant Seelbaugh abused his position of authority to intimidate Plaintiff and suppress his legal rights. His actions were willful, deliberate, and in direct violation of Plaintiff's constitutional protections. At all times relevant hereto, Defendant Seelbaugh was acting within the scope of his employment as such. He is being sued both in his individual and official capacity.

6. **Defendant Chief David Cumo**

Chief Cumo is the Chief of Police for the City of New Castle Police department who at all relevant times, was employed by the Defendant City of New Castle. At all times relevant hereto, Defendant Cumo was acting within the scope of his employment as such. He is being sued both in his individual and official capacity.

7. **Defendant Christopher Frye Jr.**

**Christopher Frye Jr. is the city manager for the City of New Castle who at all relevant times, was employed by the defendant City of New Castle. At all times relevant hereto, Defendant Frye was acting within the scope of his employment as such. He is being sued both in his individual and official capacity.**

## IV. Factual Background

8. On or about May 12, 2024, Plaintiff's children, as part of a long-standing senior prank tradition in New Castle, PA, observed their fellow classmate's toilet-papering their high school. This tradition, occurring annually for decades, is generally considered harmless and is recognized as a part of the graduating class's send-off.

9. Plaintiff's daughter chose not to participate directly in the prank; instead, she and a friend were seated in a parked car down the street, observing their classmates.

10. Nearby residents, seeing the prank, notified the police, who were subsequently dispatched to the school. Given their training and understanding of Pennsylvania law, police officers should have been aware that toilet-papering alone does not rise to the level of criminal activity without evidence of more serious property damage or trespass.

11. Upon arrival, officers found no evidence of criminal activity taking place. Despite receiving a report of toilet-papering and witnessing only this benign prank upon their arrival, officers allegedly engaged with the students in a manner that went beyond what was reasonable, considering no criminal conduct was observed.

12. Upon arrival at the scene, Officer Heaney —one of the responding officers— did not approach the group of students who were actively toilet-papering the school. Instead, Officer Heaney walked approximately 800 feet away from the reported activity toward a parked car containing Plaintiff's daughter and her friend, who were simply observing the prank from a distance.

13. Without apparent cause, Officer Heaney approached the parked car where Plaintiff's daughter was seated. Plaintiff, who was driving west on Lincoln Avenue, observed Officer Heaney approach the vehicle and, without provocation or request, open the driver's door where Plaintiff's daughter's friend was seated.

14. Plaintiff pulled up across the street, witnessing Officer Heaney's actions, which appeared aggressive and unwarranted given the lack of observed

criminal activity and the occupants' passive presence away from the prank.

15. After observing Officer Heaney's actions from across the street, Plaintiff parked his car and approached Officer Heaney to request an explanation for his actions, specifically why he was attempting an illegal search of his daughter's vehicle.

16. Plaintiff closed the car door in an effort to stop any further invasive behavior and to protect his daughter and her friend from Officer Heaney's verbal aggression.

17. In response, Officer Heaney redirected his verbal abuse toward Plaintiff, raising his voice and displaying hostility without justification. Officer Heaney's actions and words escalated the situation, despite there being no evidence of criminal activity, and created an intimidating environment for Plaintiff and his daughter.

18. Plaintiff explained to Officer Heaney that by opening the door of his daughter's vehicle without consent or probable cause, Officer Heaney had overstepped his authority and committed an act akin to burglary of a vehicle, along with an abuse of his power.

19. Upon hearing this, Officer Heaney appeared to become visibly enraged. Rather than address Plaintiff's legitimate concerns, he began yelling and demanded that Plaintiff leave the scene or face arrest, despite Plaintiff having committed no crime and having a right to be present.

20. Officer Heaney's conduct was neither investigative nor within his official capacity, as no crime was being committed, and he was not engaging with the group of students involved in the prank. Instead, he had chosen to interact with occupants in a vehicle far from the reported location, where there was no indication of criminal activity.

21. Officer Heaney's actions, marked by aggression and intimidation, constituted a misuse of his authority and created an unsafe environment for Plaintiff and his daughter without legal justification.

22. Observing Officer Heaney's escalating aggression and the lack of intervention from the other responding officers, Plaintiff concluded that Officer Heaney's behavior posed a potential danger to the public, including himself and his

daughter.

23. Recognizing that the situation was not being de-escalated by any of the officers present, Plaintiff opened the door to his daughter's vehicle and instructed her to get into his own car so they could safely leave the scene.

24. Plaintiff and his daughter then left the area to avoid further confrontation with Officer Heaney, whose behavior had created an unsafe environment rather than fulfilling his duty to ensure public safety.

25. As Plaintiff's daughter opened the car door to exit and join Plaintiff in his vehicle, Officer Heaney escalated the situation further by shouting, "Get back in the car, or I'll taze you," threatening the use of force despite there being no justification for such an action.

26. This threat, directed at Plaintiff's daughter without cause, caused further fear and distress. Officer Heaney's statement was an abuse of power, as there was no evidence of criminal behavior or any threat to public safety.

27. Despite Officer Heaney's threat, Plaintiff maintained his composure and encouraged his daughter to continue to his car, prioritizing their safety and seeking to remove her from an increasingly hostile and abusive situation.

28. Officer Heaney's threat to use a taser was particularly alarming to Plaintiff, as Plaintiff observed that Officer Heaney was not armed with a taser at the time and was only carrying his service weapon. This statement indicated a clear intent to intimidate and coerce without any lawful basis or means to carry out his threat appropriately.

29. Officer Heaney's threat, despite lacking a taser, was an alarming red flag, signaling an abusive misuse of authority that created an escalating and dangerous situation for Plaintiff and his daughter. Such behavior further demonstrated that Officer Heaney was not acting in a capacity to ensure public safety but rather to instill fear and exert unwarranted control.

30. In response to Officer Heaney's escalating aggression and his threat to use a taser, Plaintiff firmly informed Officer Heaney that any act of aggression toward himself, his daughter, or her friend would result in Plaintiff taking action to stop him by any means necessary. Plaintiff made this statement as a protective measure, given the officer's hostile behavior and the fear for his

family's safety.

31. Plaintiff's statement was intended to convey that he would not tolerate any further intimidation or harm directed at his daughter or her friend, particularly in light of Officer Heaney's verbal threats and the absence of justification for his actions.

32. Plaintiff also instructed his daughter's friend to get into his car for their safety. This action was met with similar threats from Officer Heaney, who continued to use aggressive and intimidating language to deter them from leaving the scene.

33. Officer Heaney's repeated threats directed toward both Plaintiff's daughter and her friend underscored his intent to control the situation through fear and intimidation, despite having no lawful basis to prevent their departure.

34. Plaintiff continued to prioritize the safety of his daughter and her friend, insisting they leave with him despite Officer Heaney's aggressive behavior, as there was no legal justification for detaining them or escalating the encounter.

35. Plaintiff, recognizing that no crime was being committed and that Officer Heaney's presence and actions were unwarranted, reasserted to Officer Heaney that he had no lawful grounds to detain or threaten anyone present. Plaintiff firmly instructed Officer Heaney to cease his threats toward his daughter, her friend, and himself, and advised him to leave the scene if he could not act within the bounds of his authority.

36. Plaintiff's statements were intended to de-escalate the situation and assert that Officer Heaney's actions were not only unwarranted but also an abuse of his authority, given the lack of any criminal activity occurring.

37. In response to Plaintiff's attempt to de-escalate the situation and assert his rights, Officer Heaney issued another threat, stating, "You better leave before your day gets a lot worse." This comment underscored Officer Heaney's intent to intimidate Plaintiff and his family further, despite the absence of any lawful justification for his actions.

38. Officer Heaney's continued threats and aggressive behavior created an environment of fear and intimidation, directly infringing on Plaintiff's right to ensure the safety of his daughter and her friend without undue interference or

harassment from law enforcement.

39. Plaintiff interpreted Officer Heaney's statement—"You better leave before your day gets a lot worse"—as a direct threat of physical harm. Given the officer's aggressive tone and escalating hostility, Plaintiff felt that Officer Heaney was prepared to use force against him if he did not comply.

40. This threat contributed to the environment of fear and intimidation created by Officer Heaney, further demonstrating an abuse of power and an attempt to coerce compliance through implied physical violence.

41. As Plaintiff and his daughter attempted to leave the scene, Officer Heaney continued to yell obscenities and make additional threats toward both Plaintiff and his daughter. His ongoing, hostile behavior underscored a pattern of intimidation and harassment, even as Plaintiff and his daughter were clearly trying to disengage and remove themselves from the situation.

42. Officer Heaney's persistent verbal aggression and idle threats, even as Plaintiff and his daughter were walking away, constituted an abuse of power, as he used his position to instill fear without cause or justification.

43. Before leaving the scene, Plaintiff attempted to request assistance from another officer, asking for "a favor." However, before Plaintiff could even specify his request, Officer Heaney interrupted, yelling, "We ain't doin' you any favors! Get the f**k out of here!" Officer Heaney's aggressive outburst prevented Plaintiff from seeking any form of assistance and further demonstrated his hostility and intent to escalate the situation unnecessarily.

44. Officer Heaney's actions in blocking Plaintiff's request for assistance and using profanity underscored his abusive conduct and his disregard for the basic rights and concerns of Plaintiff and his family.

45. Despite Officer Heaney's interruption, Plaintiff proceeded with his request to the other officer, asking that a supervisor be called to the scene so he could make a formal complaint regarding Officer Heaney's behavior. The other officer responded, stating, "He is the supervisor," indicating that Officer Heaney held a supervisory position and was, therefore, responsible for oversight at the scene.

46. This response left Plaintiff with no immediate avenue for recourse, as Officer Heaney, the individual engaged in aggressive and intimidating behavior, was the designated supervisor. This lack of accessible oversight further highlighted a breakdown in accountability within the department and left Plaintiff and his family vulnerable to unchecked abuse of power.

47. Upon learning that Officer Heaney was the supervising officer at the scene, Plaintiff expressed his concerns to the other officer, asking if she believed Officer Heaney's conduct was acceptable. The officer responded by moving closer to Plaintiff, lowering her voice, and saying, "Honestly, you should probably get in your truck and leave before he escalates again."

48. This response indicated that even other officers at the scene recognized the risk of Officer Heaney's behavior escalating further, and it underscored the seriousness of Plaintiff's concerns. Plaintiff interpreted this advice as a warning, confirming his belief that Officer Heaney's actions posed a genuine threat to his safety and that of his daughter.

49. In response to the officer's warning, Plaintiff repeated her words back to her, stating, "Again? You just stated 'again,' which means you are aware that he has done this in the past. This means you didn't report him for the past abuse, so you are part of the problem as well." Plaintiff's statement emphasized his concern that Officer Heaney's pattern of behavior was known within the department yet remained unaddressed, implicating other officers in a culture of tolerance toward abusive conduct.

50. After making this statement, Plaintiff got into his vehicle with his daughter and her friend, choosing to leave the scene to avoid any further escalation with Officer Heaney.

51. In the weeks following the incident, Plaintiff made multiple attempts to obtain Officer Heaney's full name in order to file a formal complaint regarding his actions. However, despite repeated inquiries, no one at the police department would provide Plaintiff with Officer Heaney's name, effectively blocking Plaintiff from proceeding with the complaint process.

52. Due to the police department's lack of cooperation, Plaintiff drafted several private criminal complaints addressing Officer Heaney's conduct. However, without Officer Heaney's full name, Plaintiff was unable to officially file the complaints, leaving him without recourse and further demonstrating a lack of

accountability within the department.

53. On October 15, 2024, Plaintiff contacted the police department to report a theft. Plaintiff dialed the main police department number, seeking assistance with the incident. However, despite his report, no officers were dispatched to his location.

54. Plaintiff later learned that the police department did not respond because he had called the main department number rather than the "non-emergency 911" phone number. This lack of response from the police, based solely on the choice of contact number, further underscored the department's lack of accessibility and responsiveness to citizen concerns.

55. On October 26, 2024, Plaintiff once again called for police assistance when the same individual who had previously stolen items returned to take additional property. This time, police officers arrived shortly after Plaintiff reached the scene and witnessed the individual in the act of the theft.

56. The prompt police response on this occasion allowed officers to observe the theft in progress, highlighting the disparity in response based on the method of contact used and underscoring Plaintiff's previous challenges in receiving adequate assistance.

57. Upon arriving at the scene on October 26, 2024, one officer immediately confirmed that Plaintiff was the caller, then proceeded to speak with the individual committing the theft. Shortly after, a second officer arrived and began speaking with Plaintiff.

58. During their conversation, the second officer initially seemed to suggest that Plaintiff might be at fault, citing that his gate was not closed. She then shifted her explanation, stating, "Well, the best we can do is trespass because he didn't actually steal anything," implying a reluctance to fully address the theft despite the circumstances.

59. The officer's response and her attempt to deflect responsibility onto Plaintiff left him feeling unsupported and frustrated, as it demonstrated a lack of willingness to address the criminal behavior occurring on his property.

60. Plaintiff repeatedly demanded that the officers charge and arrest the suspect based on their own eyewitness account of the attempted theft. Despite

Plaintiff's insistence and the clear evidence of the suspect's actions, the officers refused to take further action.

61. Frustrated and irritated by the officers' refusal to uphold the law in light of the observed crime, Plaintiff instructed both officers to call a supervisor and asked them to leave his property.

62. Plaintiff's request for a supervisor reflected his dissatisfaction with the officers' unwillingness to address the situation appropriately and highlighted his desire for accountability in how the incident was being handled.

63. A short time later, Officer Miller arrived on the scene. Almost immediately upon arrival, Officer Miller displayed visible signs of agitation and hostility toward Plaintiff, escalating the situation before any discussion had begun.

64. Based on previous responses and past interactions plaintiff expected this type of hostel behavior.

65. Officer Miller's behavior further contributed to Plaintiff's concerns about bias and the lack of impartiality in handling the incident, as his arrival seemed to intensify the officers' unwillingness to provide assistance or address the criminal activity effectively.

66. Despite Plaintiff's repeated demands that the officers arrest and charge the suspect based on their own eyewitness observations, the officers continued to refuse, attempting to explain "what an investigation is" rather than taking action on the clear evidence of attempted theft.

67. Frustrated with the officers' avoidance of his request, Plaintiff firmly stated, "I want you to go do your job and arrest the thief and charge him." In response, Officer Miller threatened Plaintiff, saying, "If you keep it up, I'll arrest you," using his authority to intimidate Plaintiff and discourage further requests for lawful action.

68. Officer Miller's threat to arrest Plaintiff was not only unprofessional but also a direct violation of Pennsylvania Criminal Statute Title 18, Section 4952, among other statutes, as it constituted an attempt to retaliate against Plaintiff for insisting on his legal right to have the suspect charged.

69. This threat underscored Officer Miller's continued abuse of power and his intent to deter Plaintiff from exercising his rights, further confirming Plaintiff's concerns about the officers' unwillingness to impartially uphold the law.

70. At this point, Plaintiff was able to ascertain Officer Miller's full name and immediately sought information on the procedure to file a formal complaint regarding his conduct and abuse of power.

71. Plaintiff's attempt to understand the complaint process reflected his determination to hold Officer Miller accountable for his repeated instances of intimidation, threats, and refusal to perform his duties objectively. This step was also a direct response to Officer Miller's inappropriate and unlawful threats toward Plaintiff.

72. When Plaintiff attempted to file a formal complaint against Officer Miller, his request was denied. Police department personnel provided various excuses, stating that there was no official complaint process or suggesting he could "write a letter" instead, but offering no clear or formal procedure for addressing his concerns.

73. This lack of a structured complaint process prevented Plaintiff from pursuing accountability for Officer Miller's behavior through official channels, further illustrating systemic issues within the department regarding transparency and accountability.

74. On October 29, 2024, Plaintiff filed a private criminal complaint with the Lawrence County District Attorney's Office, outlining the events and interactions that took place on October 26, 2024. This complaint detailed Officer Miller's actions, the officers' refusal to address the attempted theft, and the threats and intimidation tactics used against Plaintiff.

75. Plaintiff's filing of the private criminal complaint represented a formal effort to seek accountability for Officer Miller's behavior and to document the repeated instances of abuse of power and obstruction of justice he experienced during the incident.

76. On October 31, 2024, Plaintiff received a call from the Lawrence County District Attorney's Office informing him that his private criminal complaint had been denied. Plaintiff collected the paperwork detailing the denial and

reviewed the DA's decision.

77. Later that same day, Plaintiff appealed the denial of his complaint to the Court of Common Pleas, seeking a review of the DA's decision in order to pursue accountability for the October 26th incident involving Officer Miller.

78. Following Plaintiff's appeal of the denied private criminal complaint on **October 31, 2024**, **Lt. Seelbaugh engaged in retaliatory conduct** by initiating false charges against Plaintiff.

79. This **retaliation was a direct response** to Plaintiff providing **Chief of Police Cumo and the New Castle City Council** with a **previous draft of this complaint**, alerting them that he would be pursuing these violations in **U.S. District Court**.

80. Lt. Seelbaugh **abused his authority** by knowingly and intentionally filing **baseless criminal charges** against Plaintiff **to intimidate and deter him** from exercising his legal rights.

81. Plaintiff contends that **Lt. Seelbaugh's actions were deliberate and malicious**, constituting an **unlawful effort to suppress Plaintiff's First Amendment right** to petition the government for redress.

82. The **City of New Castle Police Department and City of New Castle** were aware of this retaliatory behavior but failed to **intervene or take corrective action**, further reinforcing a **pattern of unchecked misconduct** within the department.

**The City Policy, Practice, and/or Custom: Deliberate Indifference to the Use of Unnecessary, Provocative, and Confrontational Tactics**

83. Plaintiff alleges that the City of New Castle and its Police Department lack a transparent and accessible complaint process for citizens to report instances of abuse or misconduct by officers. Plaintiff's multiple attempts to obtain Officer Miller's full name and file a formal complaint were consistently obstructed.

Police department personnel provided conflicting information about the complaint process, effectively deterring Plaintiff from seeking accountability and indicating a failure of oversight and discipline within the department.

84. Following Plaintiff's complaints and reports regarding Officer Miller's conduct, the City of New Castle Police Department conducted an internal review of the incidents involving Officer Miller's behavior on May 12 and October 26, 2024. Despite having complete and detailed information about Officer Miller's abusive and confrontational tactics, the department failed to take corrective action to prevent further misconduct.

85. Officer Miller was neither removed from duty nor subject to any disciplinary measures following the internal review, despite the clear evidence of misconduct. The City of New Castle Police Department's inaction in response to documented complaints demonstrated a deliberate choice to prioritize the protection of its officers over the rights and safety of the public.

86. By retaining Officer Miller on active duty despite knowledge of his pattern of aggression and threats toward citizens, the City of New Castle and its Police Department exhibited deliberate indifference to the risk he posed to the community. This indifference created an environment where Officer Miller, emboldened by the lack of accountability, continued to engage in confrontational tactics and abuse his authority.

87. The failure to remove or discipline Officer Miller despite his ongoing misconduct underscores a broader policy or custom within the City of New Castle Police Department, one that tolerates and enables officers to disregard constitutional protections without consequence. This systemic lack of accountability exposes the department's willful choice to disregard the rights of citizens.

## Defendants' Actions Unlawfully Harmed Plaintiff and Demonstrated Willful Misconduct

88. Plaintiff contends that Officer Miller's actions constituted willful misconduct, as his confrontational behavior and repeated threats were performed knowingly and with the intention of intimidating Plaintiff, rather than

fulfilling any legitimate law enforcement duty.

89. Officer Miller's threats to arrest Plaintiff for demanding police accountability were clear retaliatory actions intended to chill Plaintiff's lawful exercise of his First Amendment rights. A reasonable officer would understand that retaliatory threats in response to protected speech are unlawful, violating clearly established rights.

90. Officer Miller's use of force, threats of arrest, and intimidation tactics were excessive, unwarranted, and outside the scope of reasonable law enforcement conduct. Plaintiff asserts that a reasonable officer would have known such actions were unconstitutional, which directly negates any claim of qualified immunity.

91. Officer Miller's actions were not only unreasonable but were undertaken with deliberate intent to abuse his authority. Such behavior falls outside the protective scope of qualified immunity, as it involved knowingly unlawful actions designed to harass and intimidate a citizen engaged in lawful activity.

92. Furthermore, the failure of other officers to intervene or report Officer Miller's conduct reflects a systemic issue of willful indifference within the City of New Castle Police Department, as they had an obligation to prevent misconduct yet allowed it to persist. Their inaction enabled Officer Miller to continue violating Plaintiff's rights, which undermines any immunity defense based on qualified or official immunity.

93. The City of New Castle's internal review and subsequent failure to take disciplinary action against Officer Miller, despite clear evidence of misconduct, highlight a deliberate choice to disregard public safety. The department's decision to retain Officer Miller in his position, knowing his pattern of behavior, was a willful choice that placed the public at continued risk of harm.

94. Defendants' actions caused Plaintiff significant emotional harm, including fear, anxiety, and frustration due to the repeated denial of his rights. Plaintiff's experiences demonstrate a broader policy or custom within the City of New Castle and its Police Department of allowing officers to disregard citizens' rights with impunity.

95. As a result of Defendants' conduct, Plaintiff suffered concrete injuries and continues to experience fear of retaliation for asserting his rights,

underscoring the need for accountability for violations of clearly established constitutional and statutory rights.

## V. Causes of Action

### Count 1: Violation of Fourth Amendment Rights - Unlawful Search and Seizure (42 U.S.C. § 1983)

1.    Defendant: Officer James Heaney, personally and in his official capacity

2.    Description: Plaintiff alleges that Officer Heaney's actions in opening the vehicle door without cause and intimidating Plaintiff and his daughter constituted an unreasonable search and seizure. These actions violated Plaintiff's Fourth Amendment rights as they were conducted without a warrant, probable cause, or reasonable suspicion.

3.    Injury: As a result, Plaintiff and his daughter experienced emotional distress, fear, and a loss of privacy.

4.    Immunity Defense Anticipation: Plaintiff asserts that the Fourth Amendment violation was clear, and a reasonable officer would have understood that conducting an unwarranted search without probable cause was unlawful.

### Count 2: Violation of Fourth Amendment Rights - Excessive Force and Threat of Force (42 U.S.C. § 1983)

1.    Defendant: Officer James Heaney, personally and in his official capacity

2.    Description: Plaintiff alleges that Officer Miller's repeated threats, including the threat to use a taser he did not possess, and his escalating hostility constituted excessive force or a threat of force. This use of authority to intimidate, without legal justification, was unreasonable and violated Plaintiff's Fourth Amendment rights.

3.      Injury: These actions caused Plaintiff and his daughter fear and emotional distress, further reinforcing an abuse of power.

4.      Immunity Defense Anticipation: Plaintiff contends that a reasonable officer would understand that using threats and intimidation in an unjustified situation is unlawful, thereby negating qualified immunity for excessive force.

**Count 3: First Amendment Retaliation (42 U.S.C. § 1983)**

1.      Defendant: Officer Nathanial Miller, personally and in his official capacity

2.      **Description:** Plaintiff alleges that Officer Miller threatened him with arrest ("If you keep it up, I'll arrest you") in response to Plaintiff's demand that Officer Miller pursue charges against a known thief who was attempting to steal Plaintiff's property. Plaintiff was lawfully asserting his right to seek redress and accountability from law enforcement, as protected by the First Amendment. Officer Miller's threat was intended to intimidate Plaintiff and prevent him from pursuing legal action against the thief, effectively deterring Plaintiff from exercising his right to seek justice. By threatening arrest, Officer Miller acted to chill Plaintiff's protected speech and discourage further complaints about the police department's refusal to enforce the law.

3.      **Injury:** Plaintiff experienced frustration, and an infringement of his right to freely demand that law enforcement act to protect his property without facing retaliatory threats. This retaliatory conduct caused emotional distress, deterred Plaintiff from exercising his rights, and deprived him of the freedom to hold law enforcement accountable for failing to take action.

4.      **Immunity Defense Anticipation:** Plaintiff contends that any reasonable officer would understand that retaliating against protected speech—specifically, a citizen's right to seek enforcement of the law and request police intervention—is a violation of the First Amendment. Therefore, qualified immunity does not shield Officer Miller from liability for his retaliatory actions.

**Count 4: Failure to Intervene (42 U.S.C. § 1983)**

1.      Defendants: Additional officers present on May 12 and October 26, 2024

2.      Description: Plaintiff alleges that other officers present during Officer Miller's and Officer Heaney's actions failed to intervene or mitigate their conduct, despite witnessing the escalations and abusive behavior. By failing to intervene, these officers allowed Plaintiff's rights to be violated and condoned Officer Miller's and Heaney's unlawful actions.

3.      Injury: Plaintiff and his daughter suffered emotional harm, fear, and an infringement on their rights due to the officers' failure to intervene.

4.      Immunity Defense Anticipation: Plaintiff contends that officers have a duty to intervene in cases of clear misconduct, and any reasonable officer would know that permitting such behavior is a violation of constitutional rights.

**Count 5: Failure to Train and Supervise (Monell Claim) - Against City of New Castle**

1.      Defendants: City of New Castle , David Cumo, Christopher Frye Jr.

2.      Description: Plaintiff alleges that the City of New Castle and its Police Department failed to properly train and supervise Officer Miller, Officer Heaney and other officers in the appropriate use of authority, handling complaints, and respecting constitutional rights. The lack of an official complaint process and repeated obstruction when Plaintiff attempted to report Officer Miller's and Officer Heaney's behavior further indicates inadequate policies.

3.      Injury: Due to this failure, Plaintiff endured repeated harassment, a lack of accountability, and was unable to effectively pursue justice for the wrongs committed.

4.      Immunity Defense Anticipation: Plaintiff asserts that Monell claims are exempt from immunity defenses under federal law, as they relate to municipal policies and practices that contributed to the violation of constitutional rights.

**Count 6: Violation of Pennsylvania Constitution - Article I, Section 8 (Unlawful Search and Seizure)**

1.      Defendant: Officer Heaney, personally and in his official capacity

2.      Description: Plaintiff alleges that Officer Heaney's actions in opening the vehicle door without cause and using intimidation tactics constitute a violation of Article I, Section 8 of the Pennsylvania Constitution, which protects citizens against unreasonable searches and seizures.

3.      Injury: Plaintiff and his daughter suffered emotional distress, fear, and loss of privacy.

4.      Immunity Defense Anticipation: Plaintiff argues that willful misconduct by Officer Heaney removes him from the protections of official immunity under Pennsylvania law.

## Count 7: Official Oppression - 18 Pa.C.S. § 5301

1.      Defendant: Officer Nathanial Miller, personally and in his official capacity

2.      Description: Plaintiff alleges that Officer Miller's intimidation, threats, and abusive behavior, conducted without justification, constitute official oppression, as he used his position of power to unlawfully coerce and threaten Plaintiff.

3.      Injury: Plaintiff experienced emotional distress and fear, as well as a deprivation of his legal rights to freedom from harassment and intimidation by a public official.

4.      Immunity Defense Anticipation: Plaintiff contends that Officer Miller's official oppression constitutes willful misconduct, thereby negating any immunity defense.

## Count 8: Excessive Use of Force - 18 Pa.C.S. § 508

1.      Defendant: Officer Nathanial Miller, personally and in his official capacity

2.      Description: Officer Miller's threats of arrest and confrontational tactics, used without lawful purpose, exceed reasonable force standards under Pennsylvania law.

3.    Injury: Plaintiff and his daughter suffered emotional distress and fear due to the threat of force without legal justification.

4.    Immunity Defense Anticipation: Plaintiff asserts that the excessive use of force constitutes intentional misconduct, which disqualifies Officer Miller from official immunity protections.

## Count 9: Harassment - 18 Pa.C.S. § 2709

1.    Defendant: Officer Nathanial Miller, personally and in his official capacity

2.    Description: Officer Miller's repeated threats, aggressive language, and baseless intimidation tactics were intended to harass Plaintiff and cause fear and distress.

3.    Injury: Plaintiff and his daughter experienced emotional harm and distress due to Officer Miller's harassment.

4.    Immunity Defense Anticipation: Plaintiff asserts that the deliberate and repeated harassment constitutes willful misconduct, which nullifies Officer Miller's immunity.

## Count 10: Intimidation of Witnesses or Victims - 18 Pa.C.S. § 4952

1.    Defendant: Officer Nathanial Miller, personally and in his official capacity

2.    Description: Officer Miller's threats and intimidation aimed to prevent Plaintiff from pursuing legal complaints and redress against him, constituting intimidation under Pennsylvania law.

3.    Injury: Plaintiff experienced fear of retaliation and was dissuaded from exercising his right to seek justice.

4.    Immunity Defense Anticipation: Plaintiff argues that this intimidation is a form of willful misconduct and directly conflicts with immunity protections under Pennsylvania law.

**Count 11: Failure to Prevent Commission of Crime - 18 Pa.C.S. § 6304**

1.      Defendants: Additional officers present on May 12 and October 26, 2024

2.      Description: Plaintiff alleges that other officers present during Officer Miller's confrontations failed to intervene or stop his conduct, enabling continued violations of Plaintiff's rights.

3.      Injury: Plaintiff and his daughter suffered emotional harm and distress due to the officers' failure to protect them from unwarranted aggression.

4.      Immunity Defense Anticipation: Plaintiff contends that these officers neglected their duty to prevent crimes, which constitutes a failure to uphold their lawful obligations and removes immunity protections.

**Count 12 – Failure to Supervise and Discipline**

1.      Defendants: City of New Castle, Chief Cumo and Christopher Frye Jr. and all others not named with knowledge of Officer Miller's conduct issues for several years, failed to supervise and discipline him effectively.

2.      Description: Despite knowing of repeated incidents involving abusive behavior and violations of citizens' rights, the department took no documented disciplinary action or corrective measures. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality may be liable under 42 U.S.C. § 1983 if a constitutional violation results from an official policy, custom, or failure to address known misconduct.

3.      Injury: This failure allowed Officer Miller to engage in repeated unreasonable and abusive conduct, directly infringing upon Plaintiff's constitutional rights and causing harm.

4.      Immunity Defense Anticipation: Defendants' failure to supervise and discipline constitutes deliberate indifference under 42 U.S.C. § 1983, precluding any claim of immunity for actions that violated clearly established rights.

**Count 13 – Negligent Retention**

1.    Defendants: City of New Castle, Chief Cumo and Christopher Frye Jr., despite awareness of Officer Miller's ongoing conduct issues, retained him in a position that exposed the public to risk.

2.    Description: By retaining Officer Miller, who was known for engaging in aggressive and intimidating behavior, the department neglected its duty to protect the public from foreseeable harm. Under Pennsylvania common law principles of negligence, negligent retention requires that the employer knew or should have known of the employee's potential for harm yet failed to act responsibly to prevent it.

3.    Injury: Plaintiff suffered harm as a direct result of this negligent retention, experiencing threats and violations of his rights.

4.    Immunity Defense Anticipation: Defendants' negligent retention demonstrates disregard for the safety of citizens, thereby negating immunity claims under Pennsylvania law related to the foreseeable harm caused by Officer Miller's actions.

**Count 14 – Violation of Right to Know and Lack of Transparency**

1.    Defendants: City of New Castle provided an incomplete and/or fabricated response to Plaintiff's Right to Know request concerning Officer Miller's disciplinary record.

2.    Description: The response claimed no disciplinary records existed, despite the department's longstanding awareness of Officer Miller's conduct issues, and public record of previous unlawful actions, obstructing Plaintiff's right to transparency and accountability. Pennsylvania's Right to Know Law (65 P.S. § 67.101 et seq.) ensures access to public records for transparency, and the lack of transparency in this case hindered Plaintiff's access to the officer's history.

3.    Injury: This lack of transparency obstructed Plaintiff's efforts to pursue justice and accountability, resulting in harm and frustration in seeking redress.

4.    Immunity Defense Anticipation: Defendants' failure to maintain accurate records undermines the right to access information, precluding any immunity defense regarding lawful access to public records.

**Count 15 – Deliberate Indifference to Rights of Citizens**

1.      Defendants: City of New Castle Chief Cumo and Christopher Frye Jr., with longstanding awareness of Officer Miller's conduct issues, failed to act to protect citizens.

2.      Description: The department's failure to supervise or discipline Officer Miller enabled a pattern of misconduct, showing deliberate indifference to citizens' rights. Under *City of Canton v. Harris*, 489 U.S. 378 (1989), a municipality's failure to train or supervise can constitute deliberate indifference if the failure reflects a disregard for the rights of individuals who will come into contact with the employee.

3.      Injury: This indifference directly contributed to the violation of Plaintiff's constitutional rights under the Fourteenth Amendment, resulting in harm.

4.      Immunity Defense Anticipation: The department's deliberate indifference to known risks negates any immunity defense for harm resulting from Officer Miller's unchecked conduct, as held in *Farmer v. Brennan*, 511 U.S. 825 (1994), where deliberate indifference requires awareness of a substantial risk and a conscious disregard of that risk.

**Count 16: First Amendment Retaliation - Retaliatory Prosecution (42 U.S.C. § 1983)**

1. Defendant: Lieutenant Seelbaugh, Chief Cumo and Christopher Frye Jr. personally and in their official capacity.

2. Description: Plaintiff alleges that Lt. Seelbaugh violated his First Amendment rights by engaging in retaliatory prosecution against Plaintiff in response to his efforts to file complaints and seek legal redress. Lt. Seelbaugh initiated false criminal charges against Plaintiff as retaliation for Plaintiff providing Chief Cumo and the New Castle City Council with a draft of this complaint and informing them of his intention to pursue these violations in U.S. District Court. This action was intended to suppress Plaintiff's protected speech and discourage him from pursuing legal accountability for police misconduct.

3. Injury: Plaintiff suffered emotional distress, reputational harm, and legal burdens as a direct result of Lt. Seelbaugh's retaliatory actions. The false charges caused Plaintiff undue hardship and were intended to intimidate him into silence.

4. Immunity Defense Anticipation: Plaintiff contends that retaliatory prosecution in response to the exercise of First Amendment rights is a clearly established constitutional violation, and a reasonable officer in Lt. Seelbaugh's position would have known that initiating baseless criminal charges as retaliation was

unlawful. As such, qualified immunity does not shield Lt. Seelbaugh from liability for his retaliatory conduct.

## Count 17: False Reports to Law Enforcement Authorities (18 Pa.C.S. § 4906)

1. Defendant: Lieutenant Seelbaugh, personally and in his official capacity.

2. Description: Plaintiff alleges that Lt. Seelbaugh knowingly made false reports to law enforcement authorities by fabricating criminal allegations against Plaintiff. These reports were made with the intent to mislead authorities, harass Plaintiff, and create false legal consequences to deter him from exercising his constitutional rights.

3. Injury: Plaintiff suffered reputational harm, legal consequences, and undue stress due to the false reports made against him.

4. Immunity Defense Anticipation: A reasonable officer in Lt. Seelbaugh's position would have known that deliberately making false reports to law enforcement authorities is unlawful and not protected under qualified immunity.

## Count 18: Official Oppression (18 Pa.C.S. § 5301)

1. Defendant: Lieutenant Seelbaugh, personally and in his official capacity.

2. Description: Plaintiff alleges that Lt. Seelbaugh misused his authority as a police officer to subject Plaintiff to unjust treatment and retaliatory legal actions without legal justification. His actions were intended to intimidate and punish Plaintiff for exercising his First and Fourth Amendment rights.

3. Injury: Plaintiff suffered emotional distress, undue hardship, and fear of further abuse of power by law enforcement.

4. Immunity Defense Anticipation: The actions of official oppression, which include abuse of authority for retaliation or harassment, fall outside the scope of qualified immunity as they are knowingly unlawful acts.

## Count 19: Obstruction of Justice (18 Pa.C.S. § 5101 & 18 U.S.C. § 1512)

1. Defendant: Lieutenant Seelbaugh, personally and in his official capacity.

2. Description: Plaintiff alleges that Lt. Seelbaugh obstructed justice by interfering with Plaintiff's legal rights, filing false reports, and attempting to hinder Plaintiff's ability to pursue legal recourse. Under Pennsylvania law (18 Pa.C.S. §

5101) and federal law (18 U.S.C. § 1512), any attempt to impede or retaliate against a party pursuing legal action is illegal.

3. Injury: Plaintiff suffered delays in legal processes, emotional distress, and increased burdens due to Lt. Seelbaugh's interference and obstruction.

4. Immunity Defense Anticipation: A reasonable officer would know that actively obstructing justice, interfering with legal proceedings, and retaliating against a citizen for exercising legal rights are violations of both state and federal law, making qualified immunity inapplicable.

## Count 20: Abuse of Office/Malfeasance

1. Defendant: Lieutenant Seelbaugh, personally and in his official capacity.

2. Description: Plaintiff alleges that Lt. Seelbaugh engaged in abuse of office and malfeasance by misusing his law enforcement authority to retaliate against Plaintiff and manipulate legal processes for personal and departmental interests. His deliberate misuse of his position demonstrates a pattern of malfeasance and unlawful conduct.

3. Injury: Plaintiff suffered harassment, reputational harm, and undue hardship due to Lt. Seelbaugh's wrongful actions.

4. Immunity Defense Anticipation: Abuse of office and malfeasance are clear violations of legal and ethical duties expected from law enforcement officers, making qualified immunity inapplicable in this context.

## Count 21: Violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1962)

1. **Defendants:** Officer Nathaniel Miller, Officer Heaney, Lt. Seelbaugh, Chief Cumo, City Manager Chris Frye Jr., and the City of New Castle

2. **Description:** Plaintiff alleges that Defendants engaged in an ongoing criminal enterprise that utilized intimidation, retaliation, and fraudulent misconduct to violate Plaintiff's rights and obstruct justice. This pattern of conduct, executed under color of law, constitutes racketeering activity in violation of **18 U.S.C. § 1962(c)**.

3. **Predicate Acts of Racketeering Activity:**

- o **False Reports (18 U.S.C. § 1341, § 1343 - Mail and Wire Fraud):** Defendants knowingly fabricated false charges against Plaintiff to discredit his complaints and suppress his legal rights.

- o **Mail, Wire, and Text Message Fraud (18 U.S.C. § 1341 & § 1343)** – Defendants used fraudulent police reports, emails, text messages, and electronic communications to justify false charges and suppress complaints.

- o **Obstruction of Justice (18 U.S.C. § 1512 & § 1513):** Defendants obstructed justice by preventing accountability for misconduct, falsifying records, and retaliating against Plaintiff.

- o **Retaliation Against a Witness (18 U.S.C. § 1513(b)):** Defendants conspired to punish Plaintiff for filing complaints and pursuing legal remedies.

4. **Enterprise:** The City of New Castle, and its Police Department, functioned as an enterprise that engaged in ongoing unlawful conduct to protect officers from accountability, retaliate against complainants, and suppress evidence of misconduct.

5. **Injury:** Plaintiff suffered reputational harm, emotional distress, legal costs, and harassment due to the Defendants' racketeering activity.

**Count 22: Conspiracy to Violate Civil Rights (42 U.S.C. § 1985(3))**

1. **Defendants:** Officer Nathaniel Miller, Officer Heaney, Lt. Seelbaugh, Chief Cumo, City Manager Chris Frye Jr., and the City of New Castle.

2. **Description:** Plaintiff alleges that Defendants engaged in a conspiracy to violate his constitutional rights by coordinating retaliatory actions, obstructing complaints, and covering up misconduct. This violates **42 U.S.C. § 1985(3)**, which prohibits conspiracies that deprive individuals of equal protection under the law.

3. **Elements of the Conspiracy:**

- o Defendants **agreed and coordinated** to file false charges and obstruct Plaintiff's efforts to hold them accountable.

- o Defendants **took overt acts** to intimidate, harass, and prevent Plaintiff from exercising his legal rights.

- o Defendants **engaged in a systematic cover-up** to shield officers from disciplinary action.

4. **Specific Acts of Conspiracy:**

   - o Chief Cumo and City Manager Chris Frye Jr. **failed to act** on known misconduct and suppressed complaints.

   - o Chief Cumo and City Manager Chris Frye Jr. **shielded officers from accountability** and obstructed investigations.

   - o Officers Miller, Heaney, and Lt. Seelbaugh **coordinated to retaliate against Plaintiff** through false reports and intimidation.

5. **Injury:** Plaintiff suffered violations of his constitutional rights, emotional distress, legal burdens, and reputational harm due to Defendants' conspiratorial actions.

## Count 23: Mail, Wire, and Text Message Fraud (18 U.S.C. § 1341, § 1343)

1. **Defendants:** Officers Nathaniel Miller, Heaney, Lt. Seelbaugh, Chief Cumo, City Manager Chris Frye Jr., and the City of New Castle.

2. **Description:** Upon information and belief, Defendants **used electronic communications, including email, police reporting systems, text messages, and phone calls, to coordinate and execute their conspiracy** to retaliate against Plaintiff. Defendants knowingly engaged in a fraudulent scheme to fabricate false criminal charges, suppress complaints of misconduct, and obstruct Plaintiff's legal rights.

3. **Specific Acts of Wire, Mail, and Text Message Fraud:**

   - o **Defendants communicated via email, internal police systems, text messages, and written reports to misrepresent facts and justify retaliation.**

   - o **False criminal charges were filed and transmitted via mail, text message communications, and electronic means to the district attorney's office and judicial system.**

   - o **Defendants used electronic and mail-based communications, including text messages, to coordinate suppression of complaints against officers and prevent disciplinary action.**

- o **Police reports, officer statements, and official records were altered or manipulated and sent electronically via email and text messages to justify retaliatory actions.**

4. **Injury to Plaintiff:**

   - o Plaintiff suffered **financial damages from legal costs, emotional distress from harassment, and reputational harm due to fraudulent police reports.**

   - o The fraudulent communications **led to criminal charges against Plaintiff, violating his due process rights.**

**Count 24: Extortion Under the Hobbs Act (18 U.S.C. § 1951)**

1. **Defendants:** Officers Nathaniel Miller, Heaney, Lt. Seelbaugh, Chief Cumo, City Manager Chris Frye Jr., and the City of New Castle.

2. **Description:** Upon information and belief, Defendants, acting under color of law, engaged in extortion by **coercing and intimidating Plaintiff through false criminal charges, legal retaliation, and abuse of authority**. Defendants knowingly misused their official positions to **damage Plaintiff's reputation, discredit his complaints, and obstruct justice through fabricated charges**.

3. **Specific Acts of Extortion:**

   - o **Defendants conspired to file false criminal charges** against Plaintiff in retaliation for exposing police misconduct.

   - o **Defendants knowingly used their official positions** to suppress Plaintiff's ability to seek legal recourse.

   - o **Plaintiff was forced to expend financial resources** to defend against wrongful criminal charges, causing economic harm.

   - o **Defendants' actions created a climate of fear**, coercing Plaintiff and others into silence to avoid further retaliation.

4. **Injury to Plaintiff:**

   - o Plaintiff suffered **financial harm** from legal expenses defending against false charges.

- o  Plaintiff endured **emotional distress, reputational damage, and suppression of legal rights**.

- o  Plaintiff's ability to seek justice and hold officers accountable was **severely obstructed by Defendants' extortionate conduct**.

## VI.    Prayer for Relief

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants City of New Castle, Officer Nathaniel Miller, Officer Heaney, Lieutenant Seelbaugh, Chief Cumo, and City Manager Chris Frye Jr., jointly and severally, and award the following relief:

1.    **Compensatory Damages**

Award Plaintiff compensatory damages for the mental and emotional distress suffered due to Defendants' unlawful conduct, including pain, suffering, and humiliation, in an amount to be determined at trial.

2.    **Punitive Damages**

Award Plaintiff punitive damages against Defendant Officer Nathaniel Miller, in his personal capacity, to punish and deter similar misconduct in the future, in an amount to be determined at trial.

Award Plaintiff punitive damages against Defendant Officer James Heaney, in his personal capacity, to punish and deter similar misconduct in the future, in an amount to be determined at trial.

Award Plaintiff punitive damages against Defendant Lt. Kevin Seelbaugh, in his personal capacity, to punish and deter similar misconduct in the future, in an amount to be determined at trial.

Award Plaintiff punitive damages against Defendant Chief David Cumo, in his personal capacity, to punish and deter similar misconduct in the future, in an amount to be determined at trial.

Award Plaintiff punitive damages against Defendant City Manager Christopher Frye Jr., in his personal capacity, to punish and deter similar misconduct in the future, in an amount to be determined at trial.

3.      **Injunctive Relief**

Issue an order requiring the City of New Castle and its Police Department to:

•       Implement proper training and supervision protocols for law enforcement officers to prevent future constitutional violations.

•       Establish a transparent and accessible complaint process for reporting officer misconduct.

•       Take corrective action against officers who exhibit a pattern of unconstitutional behavior, as evidenced in this case.

4.      **Declaratory Relief**

Declare that Defendants' actions, as described in this complaint, violated Plaintiff's rights under the U.S. Constitution, Pennsylvania Constitution, and applicable state and federal laws.

5.      **Attorney's Fees and Costs**

Award Plaintiff reasonable attorney's fees and costs incurred in bringing this action pursuant to 42 U.S.C. § 1988 and any other applicable law.

6.      **Such Other Relief as the Court Deems Just and Proper**

Grant any additional relief the Court deems just, equitable, and appropriate to fully compensate Plaintiff and prevent future violations of constitutional rights by Defendants.

Respectfully submitted,

**Daniel Romanowski**

**817-657-0911**

**VERIFICATION UNDER 28 U.S.C. § 1746**

I, **Daniel Romanowski**, declare under penalty of perjury under the laws of the United States of America that the facts stated in this complaint are **true and correct** to the best of my knowledge, information, and belief.


**Executed on:** 02/26/2025


**Daniel Romanowski**