**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DANIEL ROMANOWSKI,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF NEW CASTLE; OFFICER NATHANIEL MILLER, personally and professionally; OFFICER JAMES HEANEY, personally and professionally, LIEUTENANT KEVIN SEELBAUGH, personally and professionally, CHIEF DAVID CUMO, personally and professionally, CITY MANAGER CHRISTOPHER FRYE JR., personally and professionally, OFFICER RICHARD RYHAL, personally and professionally, and OFFICER CHRISTIAN WEBER, personally and professionally,<br><br>Defendants. | ) | No. 2:25-cv-00286-RJC<br><br>Judge Robert J. Colville |

**<u>MEMORANDUM OPINION</u>**

Robert J. Colville, United States District Judge

Before the Court is a Motion for Partial Dismissal of Plaintiff's Second Amended Complaint (ECF No. 64), filed by Defendants, City of New Castle, Officer Nathaniel Miller, Officer James Heaney, Lieutenant Kevin Seelbaugh, Chief David Cumo, City Manager Christopher Frye Jr., Officer Richard Ryhal, and Officer Christian Weber. The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331/28 U.S.C. § 1332(a), and has supplemental jurisdiction over any state-law claims pursuant to 28 U.S.C. § 1367. The Motion has been fully briefed and is ripe for disposition. For the reasons discussed herein, Defendants' Motion is granted in part and denied in part.

## I. Background & Procedural History

This action commenced on February 26, 2025, when Plaintiff filed his first Complaint. ECF No. 1. After Defendants appeared in the action, Plaintiff subsequently filed his First Amended Complaint on March 24, 2025, which Defendants then moved to dismiss pursuant to Rule 12(b)(6). ECF Nos. 22, 37. On September 30, 2025, the Court granted in part and denied in part Defendants' first motion to dismiss. ECF No. 54. Dismissal was largely without prejudice, and Plaintiff therefore filed his Second Amended Complaint on October 21, 2025. ECF No. 55. Plaintiff's Second Amended Complaint is now the operative complaint in this matter. On December 29, 2025, Defendants filed the instant Rule 12(b)(6) motion for partial dismissal of Plaintiff's Second Amended Complaint. ECF No. 64.

Plaintiff brings a number of claims against Defendants, who are officers of or who are otherwise affiliated with the New Castle Police Department. He contends that Defendants have engaged in "an ongoing, coordinated pattern of retaliation, intimidation, and surveillance" against him, which Plaintiff alleges is "in response to his protected speech and petitioning activities." Sec. Am. Compl. at 2. A more fulsome description of the relevant factual allegations is set forth at ECF No. 53 in the Court's Opinion responding to Defendants' first Motion to Dismiss. The Court hereby incorporates that description herein. To the extent that Plaintiff's allegations have been augmented in the Second Amended Complaint, the relevant facts as currently alleged are set forth in the Court's analysis *infra*.

## II. Legal Standard

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail

on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The Third Circuit explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-

> pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

Although a district court is not obligated to permit leave to amend before dismissing a complaint in a non-civil rights case, *Wolfington v. Reconstructive Orthopaedic Assocs. II P.C.*, 935 F.3d 187, 210 (3d Cir. 2019), courts generally grant leave to amend unless amendment of the complaint would be inequitable or futile. *See, e.g., Bachtell v. Gen. Mills, Inc.*, 422 F. Supp. 3d 900, 915 (M.D. Pa. Oct. 1, 2019) (citing *Phillips v. Allegheny Cty.*, 515 F.3d 224, 245 (3d Cir. 2008)). However, courts ordinarily find that, when deficiencies remain after a plaintiff has already been given an opportunity to amend his pleadings, giving further leave to amend is futile. *See Jones v. Unknown D.O.C. Bus Driver and Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (affirming dismissal with prejudice for plaintiff who had been given leave to amend and therefore "already had two chances to tell his story").

## III. Discussion

At the outset, the Court notes that Plaintiff has not updated the count numbers assigned to his claims to account for claims eliminated by the Court's prior Order and the subsequent amendments to the Complaint. For example, Plaintiff now pleads claims that he calls "Count V" and "Count VII," but there is no longer a "Count VI." The Court will refer to Plaintiff's repleaded claims according to the numbers that Plaintiff has assigned to them. The Court further notes that Defendants have not challenged Plaintiff's claims brought under Count IV (*Monell* Municipal Liability), Count XIII (Equal Protection), Count XV (Negligent Retention and Supervision), and

Count XIX (Fraudulent Communications/Deprivation of Rights). Br. in Supp. at 19, n. 16. Accordingly, these counts are not addressed here.

**A. First Amendment Retaliation (Count I)**

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). Here, Plaintiff brings a claim under Section 1983 for retaliation for his exercise of First Amendment rights. *See Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (setting out the elements of a First Amendment retaliation claim under Section 1983). "To plead a plausible First Amendment retaliation claim," a plaintiff must "allege three elements: (1) '[he engaged in] constitutionally protected conduct, (2) [there was] retaliatory action sufficient to deter a person of ordinary firmness from exercising [his] constitutional rights, and (3) [there was] a causal link between the constitutionally protected conduct and the retaliatory action." *Conard v. Pa. State. Police*, 902 F.3d 178, 183 (3d Cir. 2018) (quoting *Mirabella v. Villard*, 853 F3d 641, 649 (3d Cir. 2017)).

Plaintiff asserts his claim for First Amendment Retaliation against Defendants Frye, Ryhal, Weber, Seelbaugh, Heaney, Miller, Cumo, and the Doe Defendants. Defendants have renewed their request for dismissal only as to Defendant Seelbaugh. Accordingly, Plaintiff's claims against the remaining Defendants are not addressed herein and will not be dismissed at this stage.

Plaintiff has alleged that he engaged in several activities protected by the various clauses of the First Amendment, and that Defendants subsequently took adverse action against him. *See* Sec. Am. Compl. ¶¶ 139-41. Notably, for example, Plaintiff's Second Amended Complaint alleges that "[o]n November 16, 2024, The Vindicator, a regional newspaper, published Plaintiff's guest opinion column entitled 'Shedding Some Light on the Corruption in New Castle Police.'"

*Id.* ¶ 32; *see also id.* ¶ 139(a). He further alleges that he heard from others in the New Castle community that "certain City officials" had seen Plaintiff's op-ed and were "pissed off" and looking to "teach him a lesson." *Id.* ¶ 34. Plaintiff contends that, "in direct response to [his] protected activity," Defendant Seelbaugh "filed false criminal charges against Plaintiff." *Id.* ¶ 141. He says that these charges were filed "within hours of the November 20, 2024 meeting" at which Plaintiff showed Defendants Frye and Cumo the draft of his civil rights Complaint. *See id.*

The Court's prior Opinion explained that temporal proximity alone cannot establish causation for a retaliation claim. *See* ECF No. 53 at 14 (citing *Hammond v. City of Wilkes-Barre*, 628 F. App'x 806, 808 (3d Cir. 2015)). Because Plaintiff, in demonstrating causation, relied solely on the temporal proximity between the November 20, 2024 meeting and the alleged filing of false charges, his claim against Defendant Seelbaugh was dismissed without prejudice.

Temporal proximity alone cannot establish causation for First Amendment retaliation liability, and it is "generally required that the defendant in First Amendment retaliation actions be aware of the protected conduct in order to establish the requisite causal connection." *Hammond*, 628 F. App'x at 807-08. Nonetheless, "a suggestive temporal proximity between the protected activity and the alleged retaliatory action can be probative of causation [when] the timing of the alleged retaliatory action [is] unusually suggestive of retaliatory motive." *Id.* at 807.

In *Hammond*, the Third Circuit affirmed dismissal of a First Amendment retaliation claim when the plaintiff had relied solely on temporal proximity to establish causation. *Id.* at 808. Though the two-week period between plaintiff's protected activity and the alleged retaliatory conduct may have been "close enough temporally to be probative of causation," plaintiff relied only on bald assertions rather than specific facts in alleging that any of the defendants had knowledge of the protected activity. *Id.* (citing *Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493-

94 (3d Cir. 2002)). Because these allegations were insufficient to support defendants' knowledge, dismissal was appropriate. *Id.*

Similarly, in *Ambrose*, the Third Circuit reversed a district court's denial of defendant's motion for judgment as a matter of law when, at trial, plaintiff "did not produce any evidence showing that any of [defendants] knew about his [protected activity] before they" took the alleged retaliatory action against him. 303 F.3d at 493. The Court explained that this evidence was required because "for protected conduct to be a substantial or motiving factor in a decision, the decisionmakers must be aware of the protected conduct." *Id.* The *Ambrose* plaintiff relied only on temporal proximity in support of his claim. Though the Third Circuit acknowledged the value of temporal proximity in establishing causation, it explained "that temporal proximity can[not] be used to show that a[ defendant] was aware of the protected conduct in the first place." *Id.* at 494. Because plaintiff had advanced no evidence on this point, judgment for defendants was warranted.

Dismissing Plaintiff's claim here because he has failed to allege Defendant Seelbaugh's specific knowledge of the protected activity would be taking *Hammond* and *Ambrose* further than they require. While *Ambrose* makes clear that evidence of actual knowledge is needed to ultimately support First Amendment retaliation liability, the Court declines to require this from Plaintiff at the pleading stage.[1] And though the Third Circuit in *Hammond* affirmed dismissal of a claim from a plaintiff who had failed to allege such knowledge, the allegations made here are materially more suggestive of Defendant Seelbaugh's knowledge.

First, in *Hammond*, the temporal proximity alleged was only two weeks. Here, the temporal proximity is even more suggestive, as Plaintiff alleges that false charges were brought against him days after he wrote an op-ed published in a regional newspaper, and mere hours after

---

[1] Of course, consistent with *Ambrose*, for Plaintiff to ultimately establish Defendants' liability for First Amendment retaliation, he will need to advance evidence showing that they knew of his protected activity.

he met with certain other members of the New Castle Police Department. Moreover, the plaintiff in *Hammond* had not alleged that *any* of the defendants or their officers were actually aware of his protected activity at the time of the alleged retaliation; here, by contrast, Plaintiff alleges that he met with Defendants Cumo and Frye on November 20, 2024 to advise them of his planned litigation, and that he was subjected to retaliation shortly thereafter. While Plaintiff has not alleged that Defendant Seelbaugh had specific knowledge of the protected activity, Defendant Seelbaugh's colleagues' specific knowledge may suggest his awareness. Finally, Plaintiff's Second Amended Complaint has alleged additional protected activity—the publication of a critical op-ed—that was plainly very public in nature. Sec. Am. Compl. ¶¶ 32, 139(a). He further alleged that officials of the City were aware of the op-ed. *Id.* ¶ 34. Conversely, in *Hammond*, the protected activity that predated the alleged retaliation was plaintiff's participation in a deposition supporting a lawsuit filed against the defendant city four years prior. 628 F. App'x at 807-08. This activity seems comparatively less likely to attract public attention generally, or be known to a specific defendant.

Thus, while Plaintiff has not alleged Defendant Seelbaugh's specific knowledge, Plaintiff has alleged sufficient facts, and more than mere temporal proximity, to support the existence of that knowledge. Unlike the plaintiff in *Hammond*, Plaintiff here has alleged that certain defendants were specifically aware of his protected activity, and that defendants generally were aware of his public criticism. It is further worth noting that the temporal proximity alleged here—mere hours between protected activity and adverse action—is more suggestive of knowledgeable retaliation. At this early stage, these considerations, taken together, are enough. Therefore, Defendants' Motion to Dismiss at this count is denied.

**B. Fourth Amendment Violations (Count II)**

Plaintiff next alleges that Defendants Heaney, Miller, Ryhal, Weber, and the Doe Defendants violated his Fourth Amendment rights through unlawful search and seizure and/or excessive force. *See* Sec. Am. Compl., Count II, ¶¶ 146-53.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. To state a claim for an unreasonable search, a plaintiff must plead that a defendant "invaded areas to which the public did not have access and in which there was a reasonable expectation of privacy (e.g., private offices, storage rooms, and residences)." *Free Speech Coal., Inc. v. Att'y Gen. United States*, 825 F.3d 149, 168 (3d Cir. 2016). To state a claim for an unreasonable seizure, a plaintiff must plead "some meaningful interference with [his] possessory interests in [his] property." *Stone v. Martin*, 720 F. App'x 132, 134 (3d Cir. 2017) (internal quotation omitted). Further, "[t]o state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999).

The Court will analyze each of Plaintiff's Fourth Amendment allegations in turn. First, Plaintiff alleges that Defendant Heaney effectuated an unlawful search and seizure by opening the door of a parked vehicle in which Plaintiff's daughter was sitting and ordering her to exit the vehicle. Sec. Am. Compl. ¶ 147-49. Plaintiff further alleges that Defendant Heaney threatened to use his taser on Plaintiff's daughter if she did not comply, which he contends "constituted an excessive show of force in violation of the Fourth Amendment." *Id.* ¶ 150. In the Court's prior Opinion, upon consideration of substantially similar allegations, Plaintiff's claim against Defendant Heaney at Count II was dismissed because he had merely alleged that "*someone else*

[may have been] subject to an unreasonable search but [] made no allegations as to how Plaintiff's rights were infringed." ECF No. 53 at 17-18 (emphasis added) (footnote omitted). Defendants argue that Plaintiff's claim at Count II against Defendant Heaney should now be dismissed with prejudice because Plaintiff has again failed to allege facts to support that Defendant Heaney violated Plaintiff's own Fourth Amendment rights, and further because a mere threat of force cannot support a Fourth Amendment excessive force claim. Br. in Supp. at 10.

Plaintiff, in opposition, contends that "Count II asserts Plaintiff's own rights: (1) his person was seized by an officer's show of authority; (2) his property (a vehicle he owned/controlled) was searched without probable cause, warrant, or consent; and (3) he was later seized and intimidated at his home and in his daily life by coordinated officer conduct." Br. in Opp. at 11. Defendants respond that Plaintiff's Second Amended Complaint is devoid of such allegations and further argue that he may not amend his allegations through his brief. Br. in Reply at 4.

The Court agrees with Defendants. Contrary to his contention, Plaintiff's Second Amended Complaint does not allege that he personally was seized by Defendant Heaney.[2] Plaintiff similarly makes no allegations related to the ownership of the vehicle that was allegedly searched. And whether or not Plaintiff alleges that "he was later seized and intimidated at his home and in his daily life by coordinated officer conduct," that in no way supports that Defendant Heaney conducted an unlawful search or seizure of Plaintiff. Moreover, to the extent that Plaintiff seeks to state a Fourth Amendment excessive force claim, his claim still must fail, as he has alleged nothing more than threats of force. *See* ECF No. 53 at 18 (explaining that "the threat of force, rather than actual use of force, is insufficient to state a claim under the Fourth Amendment "). On

---

[2] Plaintiff, in his Complaint as amended, does allege that he was at the scene of the incident between his daughter and Defendant Heaney. *See* Sec. Am. Compl. ¶ 19. While he alleges that Defendant Heaney raised his voice and "directed verbal hostility toward Plaintiff," *see id.* ¶ 20, Plaintiff's allegations with respect to Defendant Heaney do not suggest any sort of search or seizure of Plaintiff.

this record, Plaintiff has not alleged a violation of his own Fourth Amendment rights that is attributable to Defendant Heaney, and Plaintiff may not supplement his allegations through his brief. See *Cruz Next Friend of K.H. v. Loughman*, No. 20-cv-1490, 2021 WL 2156502, at *3 (D. Del. May 27, 2021) ("Plaintiffs' reliance on facts not alleged in the complaint is improper, and a complaint cannot be amended by a brief."). Accordingly, Plaintiff's claim against Defendant Heaney at Count II is hereby dismissed with prejudice.

The Court next addresses Plaintiff's claims at this Count against Defendants Miller, Ryhal, and Weber. In the Court's prior Opinion and Order, it dismissed these claims because Plaintiff had failed to allege conduct rising beyond mere "verbal threats and intimidation" which are "insufficient to support a claim for Fourth Amendment violations." ECF No. 53 at 20 (citing *Burkholder v. Newton*, 116 F. App'x 358, 360 (3d Cir. 2004)). Defendants argue that these claims should now be dismissed with prejudice, as Plaintiff's Second Amended Complaint "does not allege that he was arrested," and further does not "set out any allegations of use of physical force in connection with any threats of arrest." Br. in Supp. at 11.

Plaintiff argues that he has made out his claim because, "[w]hen officers coordinate by text, appear at a litigant's door, and issue threats about his lawsuit, those encounters fall squarely within the seizure and show-of-authority framework." Br. in Opp. at 14. In support, he appears to rely on a footnote from *Brennan v. Norton*, in which the Third Circuit explained that "a plaintiff may be able to establish liability under § 1983 based upon a continuing course of conduct even though some or all of the conduct complained of would be de minimis by itself or if viewed in isolation." 350 F.3d 399, 419 n.16 (3d. Cir. 2003).

Here, the Court again agrees with Defendants. Though the Court's prior Opinion clearly explained that "verbal threats and intimidation" could not support Fourth Amendment claims,

Plaintiff, in amending his claims at this Count, did not allege any conduct beyond such verbal threats. Though Plaintiff urges the Court to follow the *Brennan* footnote in considering Defendants' alleged pattern of conduct, the issue remains that the pattern alleged includes nothing more than sporadic incidents of "verbal threats and intimidation." Quite simply, these allegations do not support Defendants' Fourth Amendment liability. Plaintiff is plainly wrong when he argues that additional alleged conduct such as "slowly driv[ing] past [his] residence" somehow converts a mere verbal threat into an unconstitutional search, seizure, or exercise of force. Plaintiffs' claims at Count II against Defendants Miller, Ryhal, and Weber are therefore also dismissed with prejudice.

Finally, Defendants argue that Plaintiff's claims at this count against the Doe Defendants must also be dismissed because they are also predicated upon nothing more than verbal threats. Br. in Supp. at 11. Plaintiff, in responding to Defendant's arguments pertaining to his claims at Count II, does not address the conduct of the Doe officers. *See* Br. in Opp. at 11-15.

Plaintiff's Second Amended Complaint alleges that "Doe Defendants conducted unreasonable seizures of Plaintiff by detaining him during confrontations at his residence and workplace without reasonable suspicion or probable cause." Sec. Am. Compl. ¶ 152. But, as addressed with respect to the named Defendants, both herein, and in the Court's previous Opinion at ECF No. 53, Plaintiff has not alleged that he was arrested, or that Defendants ever employed force against him in threatening arrest. The interactions between Plaintiff and the Doe Defendants that are described do not rise to the level of an unlawful seizure. Plaintiff's claims against the Doe Defendants are therefore also dismissed.

### C. Failure to Intervene (Count III)

Plaintiff brings his failure to intervene claim against Weber, Cumo, and the Doe Defendants. As in their previous Motion to Dismiss, Defendants argue that Plaintiff has made no allegations of excessive force, and that therefore his claims at this count must fail, as the Third Circuit has not recognized a § 1983 failure to intervene claim outside of the excessive force context. Br. in Supp. at 12. Plaintiff responds by citing to two Pennsylvania federal district court cases, *Barnett* and *Goldwire*, in which such a claim survived a motion to dismiss, and by further arguing that he has pleaded a valid claim for failure to intervene. Br. in Opp. at 15-19 (citing *Barnett v. City of Philadelphia*, 498 F. Supp. 3d 700, 713 (E.D. Pa. 2020) and *Goldwire v. City of Philadelphia*, 130 F.Supp.3d 936, 942 n.1 (E.D. Pa. 2015)).

While Plaintiff has supplied two instances in which a Pennsylvania federal court has elected not to dismiss a failure to intervene claim in the absence of allegations of excessive force, the Court agrees with Defendants that these decisions are outliers. The bulk of the courts in this circuit that have examined this question appear to have determined not to expand failure to intervene liability beyond the contours heretofore set by the Third Circuit. *Compare Barnett*, 498 F. Supp. 3d at 713 (denying dismissal of failure to intervene claim which lacked excessive force allegations), *with Armstrong v. Furman*, No. 3:19-cv-141, 2020 WL 5545270, at *6-*7 (W.D. Pa. Sept. 16, 2020) (explaining that "the Third Circuit . . . has not extended the duty to intervene beyond situations involving excessive force"), *and McIntosh v. Wetzel*, No. 20-1957, 2022 WL 3293490, at *8 (W.D. Pa. Aug. 11, 2022) ("It is well-established that any duty to intervene is limited to situations involving excessive force."); *see also Conte v. Goodwin*, No. 19-8333, 2021 WL 141337, at *5 (D.N.J. Jan. 15, 2021).

*Barnett* and *Goldwire* can further be distinguished, as each involves an alleged false arrest which resulted in the plaintiff being held in custody. *Barnett*, 498 F. Supp. 3d at 705; *Goldwire*, 130 F. Supp. 3d at 940. Plaintiff alleges that he was subjected to false charges, but he alleges no arrest or seizure of his person that is comparably invasive to the detentions in *Barnett* and *Goldwire*. Therefore, recognizing a failure to intervene claim here would be an even further extension than that taken by these outlier district courts.

Moreover, nearly a year after *Barnett* (and nearly six years after *Goldwire*), the Third Circuit explicitly noted that it had not yet recognized failure to intervene claims outside of the excessive force context. *See Lozano v. New Jersey*, 9 F.4th 239, 246 n.4 (3d Cir. 2021). In light of these considerations, the Court finds that dismissal of the failure to intervene claims at Count III is still warranted. Plaintiff has not made any allegations of excessive force, and his failure to intervene claim thus fails as a matter of law pursuant to the failure to intervene doctrine as presently applied in the Third Circuit. Because Plaintiff was unable to amend his Complaint to adequately state the claims brought at this count, dismissal is now with prejudice.

**D. Conspiracy to Violate Civil Rights (42 U.S.C. § 1985(3)) (Count V)**

In its first Opinion, the Court explained that it was unable to determine which sort of claim Plaintiff intended to bring at this count. To the extent that Plaintiff intended to bring this claim pursuant to Section 1985(3), the claim was dismissed because Plaintiff had failed to plead that Defendants, in conspiring against him, were motivated by a racial or other class-based discriminatory animus, as required for a Section 1985(3) claim. ECF No. 53 at 27-28. Moreover, to the extent that Plaintiff's claim was brought pursuant to Section 1983, it was dismissed, as any conspiracy claim was duplicative of Plaintiff's other Section 1983 claims. ECF No. 53 at 28. The Court further acknowledged that Plaintiff had cited to one case from the Section 1985(2) context

but noted that that statutory provision was apparently not relevant to this case, as Plaintiff had not otherwise referenced it in his complaints or briefs. *See* ECF No. 53 at 28 n.3.

Plaintiff's Second Amended Complaint again states that Count V is brought pursuant to 42 U.S.C. Section 1985(3). In order to assert a valid Section 1985(3) claim, Plaintiff is required to plead that Defendants were motivated by a racial or class based discriminatory animus. *Bolus v. Pennsylvania Office of Atty. Gen.*, No. 3:13-cv-1460, 2014 WL 131635, at *4 (Jan. 13, 2014). However, the Second Amended Complaint entirely lacks such allegations. Thus, though Plaintiff was given leave to augment his claim as appropriate, he has still failed to plead the requisite facts, and his claim at Count V therefore is dismissed with prejudice.

Plaintiff appears to acknowledge that the claim that he stated must fail, as he urges now, for the first time in his opposition brief to this second motion to dismiss, that his claims at this count "actually fit more precisely within the second clause of § 1985(2), which protects parties and witnesses in federal court from conspiracies to deter them 'by force, intimidation, or threat' from attending or testifying, or to injure them for having done so." Br. in Opp. at 21-22. Whether or not this is correct, the argument is made too late. The Court invited Plaintiff to amend his allegations at this count to bring them into conformance with the law's requirements, and even noted that it did not understand Plaintiff to be bringing his claims under Section 1985(2). If that, in fact, *was* the claim that Plaintiff intended to bring, he had his opportunity to do so in his Second Amended Complaint. It is simply unjust to require Defendants to try to respond to Plaintiff's ever-shifting position with respect to the statutory provision that he relies upon at this count. Plaintiff cannot amend his claim via brief. Therefore, the claim is now dismissed with prejudice.

**E. RICO (Count VII)**

Count VII of Plaintiff's Second Amended Complaint is brought pursuant to the Racketeer Influenced and Corrupt Organizations Act, or RICO, against all individual and Doe Defendants. In the Court's analysis of the previously pleaded version of this claim, it determined that Plaintiff had failed to allege facts to support a pattern of racketeering activity with a closed-ended continuity but held that he had pleaded sufficient support for a pattern of such activity with an open-ended continuity. ECF No. 53 at 32-34. With respect to predicate acts, as relevant here, the Court dismissed without prejudice Plaintiff's claims predicated upon alleged obstruction of justice because they were unsupported by allegations of witness tampering in connection with an official proceeding.

Plaintiff's Seconded Amended Complaint repleads this claim based upon the following predicate acts: extortion, obstruction of justice, tampering with records, and wire fraud. Sec. Am. Compl. ¶¶ 221-238. Plaintiff further alleges a RICO conspiracy. *Id.* ¶¶ 252-54. Defendants, in their Motion to Dismiss, do not challenge the adequacy of Plaintiff's allegations with respect to the predicate acts of extortion and wire fraud, and they further do not challenge Plaintiff's RICO conspiracy allegations. Br. in Supp. at 15 n.13. Therefore, these allegations are not addressed herein.

However, Defendants contend that Plaintiff's civil RICO claim based on the alleged predicate offenses of obstruction of justice and tampering with records should be dismissed with prejudice. Br. in Supp. at 14-15. These predicate offenses are addressed in turn.

In its prior Opinion, the Court explained that, for a claim brought under 18 U.S.C. § 1503, "[t]he Third Circuit is clear that obstruction of justice only qualifies as a predicate offense for RICO cases when there are allegations of witness intimidation." ECF No. 53 at 39 (citing

*CollegeSource, Inc. v. AcademyOne, Inc.*, 597 F. App'x 116, 126 (3d Cir. 2015)). Because Plaintiff had failed to make specific allegations of such intimidation in connection with an official proceeding, the claim, to the extent it was brought under 18 U.S.C. § 1503, was dismissed without prejudice. ECF No. 53 at 39. Defendants argue that Plaintiff's repleaded claim pursuant to 18 U.S.C. § 1503 still makes no such allegations, and that therefore, Plaintiff's RICO claim based on the obstruction of justice predicate should be dismissed with prejudice. Br. in Supp. at 14-15.

Here, the Court finds Plaintiff's obstruction of justice predicate adequately pled. Plaintiff has conceded that his allegations regarding the false charges brought by Defendant Seelbaugh cannot support the obstruction predicate, as the alleged false charges predate this federal action. *See* ECF No. 68 at ¶ 3. The remaining support that Plaintiff offers for this predicate is Defendants' alleged misconduct on March 4 and 5, 2025. Namely, Plaintiff alleges: (1) that Defendants Ryhal and Weber confronted Plaintiff at his home after Plaintiff arranged for a process server to serve notice of this lawsuit on Defendant Heaney; (2) that Defendant Ryhal manufactured a police report falsely describing this incident; (3) that Defendant Cumo approved the manufactured false report; and (4) that Defendant Frye knowingly and intentionally failed to comply with disclosure obligations under the Pennsylvania Right-to-Know Law. Sec. Am. Compl. ¶¶ 226-29.

Though record fabrication is no doubt improper conduct, it is not witness intimidation that can support Plaintiff's obstruction theory. Setting aside these allegations, the only remaining allegation in support of obstruction pursuant to 18 US.C. § 1503 is Plaintiff's contention that Defendants Ryhal and Weber "confronted Plaintiff to intimidate him into ceasing service of process on Officer Heaney, thereby obstructing this federal litigation." Sec. Am. Compl. ¶ 226. This conduct, if proven, may be the sort of witness intimidation that suffices as a predicate under this provision. *See CollegeSource, Inc.*, 597 F. App'x at 126 ("Under our case law, only *acts*

*directly affecting parties*, witnesses or jurors—and not other acts that may merely influence the proceedings—are cognizable as predicate acts under RICO.") (emphasis added) (internal citation omitted). Plaintiff alleges that Defendants Ryhal and Weber sought to directly affect the parties to this federal action by impeding the service of process. Therefore, with respect to Plaintiff's civil RICO claim based on the obstruction of justice predicate offense, the Court will deny Defendants' motion to dismiss.

However, with respect to Plaintiff's claim based on the predicate offense of tampering with records, for which he cites 18 U.S.C. § 1512, the Court will grant Defendants' motion to dismiss. This claim is predicated upon Plaintiff's allegation that Magisterial District Judge Melissa Amodie or a member of her staff who is married to Defendant Cumo altered official magisterial district court records so that they would be unavailable to support Plaintiff's claims in this action. *See* Sec. Am. Compl. ¶¶ 230-234. But, as Defendants rightly point out, Judge Amodie and her employee are not parties to this lawsuit. Br. in Supp. at 15. Though Plaintiff does say that "Defendants or persons acting in concert with them altered the official court record," *see* Sec. Am. Compl. ¶ 230, the Court does not find this allegation credible and will not credit it. Plaintiff has made no allegation to suggest that any of the defendants to this action could have accessed and altered official court records. Whether or not Judge Amodie or her employee altered their records, they are not defendants here, and Plaintiff has provided no basis for holding Defendants liable for their conduct.

Plaintiff responds that he does not yet know who in Judge Amodie's office altered the records, and that he is not required to identify the precise individual responsible until he is able to access evidence through discovery. Br. in Opp. at 25. That is, of course, correct, and Plaintiff has named Doe Defendants in this action. But Plaintiff identifies each Doe Defendant as an as-yet-

unidentified member of the New Castle Police Department—again, not anyone who could plausibly alter official court records. *See* Sec. Am. Compl. ¶ 11. Indeed, in describing the conduct of the Doe Defendants, Plaintiff refers only to alleged surveillance activity and makes no mention of the alteration of records. *See id.* Because Plaintiff has not plausibly alleged that a *defendant to this action*, Doe or otherwise, is responsible for tampering with the records from Judge Amodie's court, Plaintiff's civil RICO claim based on the predicate offense of tampering with records is dismissed, now with prejudice.

**F. Falsification of Official Records (42 U.S.C. § 1983) (Count VIII)**

At Count VIII, Plaintiff brings claims for "fabrication of evidence/due process" against Defendants Ryhal, Cumo, Frye, and Seelbaugh. Sec. Am. Compl. ¶¶ 257-65. Plaintiff brought similar claims in his First Amended Complaint pursuant to 18 U.S.C. § 1519, which the Court dismissed, as that is a criminal statute that does not give rise to private causes of action. ECF No. 53 at 40. The Court further noted that, to the extent that Plaintiff had actually intended to assert a claim for fabrication of evidence under the Fourteenth Amendment, the claim would nonetheless fail because he had failed to allege a requisite deprivation of life, liberty, or property. ECF No. 53 at 41.

Defendants argue that Plaintiff's repleaded claims at Count VIII of his Second Amended Complaint against Defendants Ryhal, Cumo, and Frye should be dismissed because Plaintiff did not supplement his factual allegations at this Count following the Court's previous Opinion recognizing the claims' deficiencies. Br. in Supp. at 15-16. Defendants further argue that Plaintiff's claim at this count against Defendant Seelbaugh, which was added in the Second Amended Complaint, is unsupported by the factual allegations advanced by Plaintiff. Br. in Supp. at 16. Plaintiff responds by arguing that the allegations that he has raised satisfy the requirements

for a Fourteenth Amendment fabrication-of-evidence claim according to the standards used by the Third Circuit in *Halsey v. Pfeiffer*. Br. in Opp. at 28-30 (citing 750 F.3d 273 (3d Cir. 2014)).

With respect to Defendants Ryhal, Cumo, and Frye, the Court agrees with Defendants and will dismiss Plaintiff's claims with prejudice. In the Court's previous Opinion, Plaintiff was advised that, even if he had brought his falsification of official evidence claims pursuant to the appropriate statute, Plaintiff's claims would nonetheless fail because he had failed to "'allege that he was deprived of life, liberty, or property in some way as a result of the fabricated evidence.'" ECF No. 53 at 41 (citing *Deforte v. Borough of Worthington*, 364 F. Supp. 2d 458, 482 (W.D. Pa. 2019)). The Court acknowledged that Plaintiff *had* alleged that he had been subjected to both false criminal charges and fabricated evidence in the form of a falsified police incident report. However, it explained that these allegations could not support Plaintiff's claim, as the allegedly false charges were brought *months before* the creation of the allegedly false incident report. *See id.* at 41 n.5.

Plaintiff's Second Amended Complaint, like his first, alleges that he was subjected to false criminal charges on November 20, 2024, and that a false police report was subsequently manufactured on March 5, 2025. Sec. Am. Compl. ¶¶ 260-61. Plaintiff contends that the fabricated police report was "used to justify the criminal charges against" him, and that he had to defend against the charges "[a]s a direct result of this fabrication." *Id.* ¶¶ 263-64. However, the Court will not credit such allegations, as they defy logic. Quite frankly, it makes no sense to suggest that the charges against Plaintiff were predicated upon a fabricated police report that did not exist until more than three months *after* the charges were filed.

Plaintiff is, of course, correct that the Third Circuit has recognized a Fourteenth Amendment fabrication-of-evidence claim, but importantly, such a claim exists only in cases where the alleged deprivation is the *result* of the fabrication. *See Halsey*, 750 F.3d at 292

(recognizing the claim in cases in which "a state actor has violated the defendant's right to due process of law *by fabricating evidence to charge or convict the defendant*") (emphasis added); *see also Deforte*, 364 F. Supp. 3d at 480 (explaining that "the plaintiff must establish a 'meaningful connection' between the due process injury and the use of fabricated evidence").[3] Thus, consistent with the Court's previous Opinion, Plaintiff has failed to state his claim, as he has not alleged facts to suggest that he was subjected to a deprivation that was in any way *caused* by the fabrication of evidence. His claims at Count VIII against Defendants Ryhal, Cumo, and Frye are consequently now dismissed with prejudice.

With respect to Defendant Seelbaugh, the Court first notes that Plaintiff is mistaken in asserting that "[t]his Court already held Plaintiff adequately alleged fabrication against Seelbaugh." *See* Br. in Opp. at 29. In actuality, Plaintiff's operative complaint at the time of the Court's previous Opinion brought no claims against Defendant Seelbaugh at Count VIII. *See* First Am. Compl. (ECF No. 22) at 41. Thus, the Court has not previously considered whether Plaintiff properly stated a Fourteenth Amendment fabrication-of-evidence claim against Defendant Seelbaugh.

While Plaintiff has made allegations about both false charges and a falsified police incident report, he clearly explains that those charges predate the incident report by months. On that record, the Court is unable to find that there was any "meaningful connection" between the allegedly falsified March 5, 2025 report and Defendant Seelbaugh's determination to file charges against

[3] The Court acknowledges that Plaintiff contends that the Third Circuit's jurisprudence on fabricated evidence claims "does not require that fabricated evidence lead to charges or conviction." Br. in Opp. at 28. The only legal authority cited in support is inapposite, as it actually pertains to the requirements for a Section 1983 malicious prosecution claim. *Id.* at 28-29 (citing *Halsey*, 750 F.3d at 292 n.16). In any event, this argument does not help Plaintiff. Whether or not he is correct, he has not alleged a deprivation caused by the fabrication of evidence, which is clearly required. Moreover, Plaintiff's contention that his claim can be supported by the "ongoing potential" that Defendants will use the allegedly fabricated record against him in the instant federal proceedings is entirely unsupported by citation. *See* Br. in Opp. at 29. It goes without saying that "potential" misconduct that has not yet occurred yet cannot support Plaintiff's claims.

Plaintiff on November 20, 2024. Therefore, for the same reason that Plaintiff's claims at Count VIII against Defendants Ryhal, Cumo, and Frye fail, his new claim against Defendant Seelbaugh is also dismissed.

**G. Knowingly False Official Statements/Due Process (42 U.S.C. § 1983) (Count IX)**

Count IX of Plaintiff's Second Amended Complaint brings a claim pursuant to Section 1983 for alleged false official statements against Defendant Frye only. Plaintiff alleges that Defendant Frye, in his capacity as city manager, responded to a request made by Plaintiff pursuant to the Pennsylvania Right-to-Know Law. Sec. Am. Compl. ¶ 267. Allegedly, Defendant Frye told Plaintiff that records responsive to Plaintiff's request did not exist despite knowing that that was untrue. *Id.* Plaintiff contends that he later received responsive records in a subsequent, inadvertent document production. *Id.* ¶ 268. Plaintiff says that Defendant Frye knowingly refused his request to conceal evidence that would have been helpful to Plaintiff, both in the instant suit and in defending against the criminal charges that were brought against him. *Id.* ¶¶ 270-72.

In the Court's prior Opinion and Order, a similar claim against Defendant Frye was dismissed without prejudice. The Court explained that because Plaintiff's Section 1983 claim at this count was premised entirely upon alleged misstatements made during Pennsylvania Right-to-Know proceedings, which are exclusively within the jurisdiction of Pennsylvania state courts, this Court did not have jurisdiction over this Section 1983 claim as pled. ECF No. 53 at 42.

Defendants now argue that, though Plaintiff's repleaded claim indicates that it was brought pursuant to Section 1983 rather than pursuant to the Right-to-Know Law, the claim "remains squarely based on allegations stemming from Frye's original response to Plaintiff's Right-to-Know request." Br. in Supp. at 17. Because those Right-to-Know requests are the exclusive jurisdiction of the Pennsylvania state courts, Defendants contend that this claim should now be dismissed with

prejudice. Plaintiff responds that Count IX alleges a violation of his due process rights, rather than a violation of the Right-to-Know Law, and further that the Right-to-Know violation was simply evidence of that due process violation. Br. in Opp. at 30-32.

Pennsylvania Right-to-Know proceedings are exclusively within the jurisdiction of Pennsylvania state courts, and further, a violation of the Pennsylvania Right-to-Know Law cannot sustain a Section 1983 claim. *See Hernandez v. Commonwealth of Pennsylvania*, Civil Action No. 25-CV-3265, 2025 WL 2233673, at *5 (E.D. Pa. Aug. 5, 2025) (citing *Miller v. Nelling*, No. 22-3329, 2023 WL 2743564, at *6 (E.D. Pa. Mar. 31, 2023)); *see also Benn v. Universal Health System, Inc.*, 371 F.3d 165, 174 (3d Cir. 2004) ("Section 1983 does not provide a cause of action for violations of state statutes."). Therefore, the Court's prior Opinion and Order dismissed this claim without prejudice, to the extent that it was premised entirely upon Right-to-Know proceedings. Nonetheless, in the Second Amended Complaint, the only conduct alleged at this Count remains Defendant Frye's alleged misstatements made during the Right-to-Know proceedings. Plaintiff attempts to argue that he has not alleged a Right-to-Know violation, but rather an "abuse[ of] official authority to conceal evidence and obstruct federal litigation." Br. in Opp. at 30. But the only mechanism by which Plaintiff has alleged that authority was "abused" was through a violation of the Right-to-Know Law. And even assuming Plaintiff's allegations at this count are true, it is not clear how Defendant Frye's failure to comply with his Right-to-Know obligations could have obstructed this federal litigation. Indeed, entirely separate from the Right-to-Know process, the federal courts allow litigants to obtain through discovery the documents and information that is required to support their claims.

Plaintiff cites no authority to suggest that due process rights are at all implicated by an official's alleged failure to comply with the requirements of a state records disclosure law. His

claim at this Count thus fails, as a Section 1983 claim cannot be premised upon alleged violations of the state Right-to-Know statute. Plaintiff's claim at this count is now dismissed with prejudice.

Additionally, the Court notes that it does not credit Plaintiff's argument that the Right-to-Know proceedings must be susceptible to federal jurisdiction because Defendants have been represented by the same counsel for purposes of both a Right-to-Know appeal and federal litigation. *See* Br. in Opp. at 31-32. Defendants' choice of counsel in any given matter is plainly immaterial to this Court's jurisdiction or the adequacy of Plaintiff's pleadings.

**H. Intentional Infliction of Emotional Distress (Count X)**

In Count X of his Second Amended Complaint, Plaintiff brings a claim for Intentional Infliction of Emotional Distress against Defendants Heaney, Miller, Seelbaugh, Ryhal, Weber, and the Doe Defendants. In its previous Opinion, the Court dismissed without prejudice similar claims brought against Defendants Heaney, Miller, Ryhal, and Weber, as the threats alleged by Plaintiff could not support IIED liability. *See* ECF No. 53 at 43. However, with respect to Defendant Seelbaugh, the Court denied Defendants' Motion to Dismiss, as the alleged filing of false criminal charges could plausibly support such a claim. *Id.* at 44. The Court also explained that Plaintiff's allegation that Defendants coordinated in falsifying records could support his claim. *Id.*

In the instant motion, Defendants do not challenge Plaintiff's claim at this Count against Defendant Seelbaugh. However, Defendants argue that Plaintiff's repleaded IIED claim should be dismissed as to Defendants Heaney, Miller, and Ryhal, as they contend that Plaintiff's Second Amended Complaint still fails to include any allegations of conduct more outrageous than mere threats. Br. in Supp. at 18. Defendants further argue that the claims against Defendant Weber and the Doe Defendants should be dismissed, as Plaintiff does not advance any discrete allegations of outrageous conduct against them. *Id.* Plaintiff responds by reiterating that he has alleged a

coordinated scheme of conduct by Defendants, and that that scheme supports their IIED liability. Br. in Opp. at 34-35.

To succeed on a claim for intentional infliction of emotional distress, a plaintiff must establish that: "(1) the defendant's conduct was extreme and outrageous; (2) the defendant's conduct caused the plaintiff severe emotional distress; and that (3) the defendant acted intending to cause that person such distress or with knowledge that such distress was substantially certain to occur." *Ghrist v. CBS Broad., Inc.*, 40 F. Supp. 3d 623, 630 (W.D. Pa. 2014). As explained in the Court's prior Opinion, "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" will not suffice to establish IIED liability. ECF No. 53 at 43 (citing *Kazatsky v. King David Memorial Park, Inc.*, 527 A.2d 988, 991 (Pa. 1987)). However, participation in a coordinated scheme to falsify records is the sort of outrageous conduct that may support liability. *Id.* at 44.

First, the Court will deny Defendants' Motion to Dismiss as to Defendant Ryhal. Plaintiff indicated that his claim at this count against Defendant Ryhal is predicated upon Defendant Ryhal's fabrication of a police report. Sec. Am. Compl. ¶ 276(d). Plaintiff alleges that, after he arranged for a process server to attempt to serve Defendant Heaney with notice of this suit, Defendant Ryhal prepared an incident report which Plaintiff says "falsely characteriz[ed] the process server's lawful attempt to serve legal papers as 'harassment' and 'intimidation.'" *Id.* ¶ 57. As described *supra*, it is not clear to the Court how this allegedly falsified incident report could support the charges that had been previously brought against Plaintiff. Nonetheless, Plaintiff has alleged that Defendant Ryhal intentionally falsified official records against him. At this early stage of litigation, that conduct is sufficiently outrageous such that Plaintiff's IEED claim against Defendant Ryhal survives.

Next, Defendants are correct that the allegations against Defendants Heaney and Miller set forth under Count X in Plaintiff's Second Amended Complaint do not rise above the level of mere threats. *See* Sec. Am. Compl. ¶¶ 276(a)-(b). Such claims do not support IIED liability. Similarly, Plaintiff does not include any discrete allegations against Defendant Weber or the Doe Defendants at this count. Nonetheless, Plaintiff, at this count, has clearly incorporated all preceding allegations made throughout his Second Amended Complaint. *Id.* ¶ 274. Therefore, to the extent that Plaintiff alleges elsewhere that any of these Defendants participated in the coordinated scheme to falsify records against him, he may have stated a viable claim for IIED against that Defendant. The Court will address Plaintiff's specific allegations against these Defendants in turn.

As to Defendant Heaney, Plaintiff's primary allegation is that he opened the door to a car that Plaintiff's daughter was sitting in and that he then threatened to tase Plaintiff's daughter. Sec. Am. Compl. ¶¶ 15-20. Plaintiff next alleges that Defendant Heaney sent a text "identify[ing] Plaintiff's vehicle and name" to another officer. *Id.* ¶¶ 51-52. Finally, Plaintiff alleges that Defendant Heaney has driven slowly past Plaintiff's house in a manner which Plaintiff describes as "clearly intended to convey surveillance and intimidation." *Id.* ¶ 66. Plaintiff has not alleged any involvement by Defendant Heaney in an effort to falsify records against Plaintiff or to pursue false criminal charges against him, and the conduct by Defendant Heaney that Plaintiff does allege was not extreme and outrageous such that it would support an IIED claim. Therefore, Plaintiff's claim at this count against Defendant Heaney is now dismissed with prejudice.

Plaintiff's claims at this count against Defendants Miller and Weber suffer the same fate. Plaintiff alleges that Defendant Miller threatened him with arrest, *see id.* ¶ 29, but this mere threat cannot support IIED liability. Similarly, Plaintiff's only allegation regarding Defendant Weber is that he joined Defendant Ryhal in confronting and questioning Plaintiff at his home. *See id.* ¶¶ 53-

54. Because there are no allegations to suggest Defendants Miller or Weber's involvement in any extreme or outrageous conduct, Plaintiff's claims against them at this count are dismissed with prejudice.

With respect to the Doe Defendants Plaintiff has apparently not alleged any extreme or outrageous conduct attributable to as-yet unidentified officers. Plaintiff, in presenting the Doe Defendants, describes police officers engaged in isolated instances of alleged surveillance activity. *See* Sec. Am. Compl. ¶ 11. Conduct such as parking near Plaintiff's home, driving slowly past it, and engaging in other surveillance, though perhaps troubling to Plaintiff, is not the sort of extreme and outrageous conduct that gives rise to IIED liability. Plaintiff's claims at this count against the Doe Defendants are therefore dismissed. However, Plaintiff does allege (albeit in conclusory fashion) that Doe Defendants participated in other alleged misconduct, including the fabrication of evidence. *Id.* ¶ 14. To the extent that discovery reveals that Doe Defendants have participated in such fabrication or in similarly extreme or outrageous conduct, dismissal of Plaintiff's claims here is without prejudice.

**I. Substantive Due Process (Count XIV)**

Count XIV of Plaintiff's Second Amended Complaint is brought against all Defendants pursuant to Section 1983 and alleges that Defendants' pattern of conduct violated Plaintiff's substantive due process rights. Sec. Am. Compl. ¶ 316. In the Court's previous Opinion, it explained that, to the extent that Plaintiff sought to premise these claims upon the alleged filing of false criminal charges, such claims were dismissed because those allegations cannot support a substantive due process claim. ECF No. 53 at 49 (citing *Albright v. Oliver*, 510 U.S. 266 (1994)). However, Plaintiff cited other conduct at this claim—namely, that Defendants had "coordinated the use of police powers for personal vendettas; fabricated evidence; sworn to false statements in

an effort to conceal misconduct; and restricted his ability to travel." *Id.* The Court therefore did not dismiss these claims, explaining that Defendants had not cited to applicable caselaw to support the contention that Plaintiff's substantive due process claims could not be predicated upon such conduct. *Id.* at 50.

Defendants now argue that, consistent with the Court's prior Opinion, Count XIV of Plaintiff's Second Amended Complaint should be dismissed or struck, to the extent that it continues to be predicated upon allegations that Defendants filed false criminal charges against Plaintiff. Br. in Supp. at 18-19. Moreover, they allege that the claims should be dismissed to the extent that they are premised upon the alleged "alteration of official court records," as Plaintiff has not alleged that any of the Defendants to this action engaged in such conduct. *Id.* at 19. Rather, Defendants contend that Plaintiff has alleged that either Magisterial District Judge Melissa Amodie or a member of her staff who is married to Defendant Cumo altered the records. Therefore, Defendants contend that the portion of Plaintiff's claims that is premised upon these allegations should be struck or dismissed.

Plaintiff, in response, has conceded that he cannot premise his substantive due process claims upon the filing of false charges. Accordingly, he has agreed to strike such allegations from his Complaint. *See* Br. in Opp. at 36 ("Plaintiff will stipulate to strike ¶¶316 and 318(b) to extent they rely solely on false charges."). Plaintiff does not appear to respond to Defendants' arguments regarding his allegations pertaining to the alteration of court records.

Accordingly, to the extent that Plaintiff's claims at Count XIV are premised upon either the filing of false criminal charges or the alteration of official court records, Plaintiff's claims are hereby struck from his Complaint. Namely, references to such conduct in paragraphs 316, 318(b), and 318(f) are hereby struck from Plaintiff's Second Amended Complaint.

### J. Prayer for Relief

Defendants further argue that the "Prayer for Relief" section of Plaintiff's Second Amended Complaint includes certain requests that are improperly stated, and which should thus be dismissed. Br. in Supp. at 19-20. Plaintiff filed a response to this Court which concedes that the challenged requests are improperly stated. ECF No. 69. Accordingly, Plaintiff's request for a "[d]eclaratory judgment that the alteration of Plaintiff's criminal case records violated" certain federal statutes is dismissed. *See* Sec. Am. Compl., Prayer for Relief at E(i)-(iii). Moreover, because Plaintiff is proceeding *pro se*, his requests for attorneys' fees pursuant to 42 U.S.C. § 1988 and 18 U.S.C. § 1964(c) are also dismissed. *See* Sec. Am. Compl., Prayer for Relief at F.

## IV. Conclusion

For the reasons discussed herein, Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint is granted in part and denied in part. An appropriate Order of Court follows.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: November 5, 2026

cc: All counsel of record

Daniel Romanowski
323 E Wallace Ave
New Castle, PA 16101